HAMITER, Justice.
 

 The Union Sulphur Company, Inc., because of two separate controversies relative to royalties due for oil produced under its lease on a 40-acre tract of land in Jefferson Davis Parish, instituted this concursus proceeding, depositing in the registry of
 
 *319
 
 ' the court a sum of money representing the disputed interests and citing the respective claimants.
 

 The first controversy concerns Eugene Lognion (the landowner), on the one hand, and Mrs. Zilmere Pitre, Charles R. Houssiere and Paul Zimmerman, on the other. The second involves a dispute between the named landowner and the Reverend Jules O. Daigle. Those opposing the landowner found their claims on royalty deeds executed by him. In bar of the claims, in this proceeding, he pleaded specially the prescription of ten years liberandi causa.
 

 Except as to a 1/6144 royalty interest ac•quired by Mrs. Pitre from her daughter, Dorothy Bell Pitre, the district court decreed that the claims' of Mrs. Pitre, Houssiere and Zimmerman had prescribed; and from the adverse ruling those claimants appealed. The court, however, overruled the plea of prescription as to the claim of Jules O. Daigle and recognized him as the owner of a 1/512 royalty interest. From this part of the judgment Lognion appealed.
 

 The claims of Mrs. Pitre, Houssiere and Zimmerman stem from an instrument of September 12, 1934, by which Eugene Lognion, the landowner, conveyed to Clarphy Pitre “a royalty interest of l/256th out of all of the oil, gas, sulphur and other minerals, that may be produced * * * ” from the land in question. On May 3, 1935, Pitre conveyed one-half of his acquisition, ■or a 1/512 royalty interest to Paul Zimmerman. 'The latter, on September 19, 1935, sold a 1/1024 mineral royalty (one-half of that acquired) to Elias Isaac, and he, on May 7, 1941, conveyed the same interest to Charles R. Houssiere.
 

 .Clarphy Pitre died August 24, 1939, being survived by his widow in community, Mrs. Zilmere Pitre, and also six children. At that time all of the children were majors except Dorothy Bell Pitre, the date of whose birth was May 20, 1920. On the death of Clarphy Pitre, his six children inherited one-half of the unsold portion of the royalty that he acquired from Eugene Lognion, and the remaining one-half belonged to the surviving widow in community, Mrs. Pitre. On October 16, 1939, the minor Dorothy Bell Pitre was emancipated by a judgment of court; and on October 20, 1939, the six children (including the emancipated minor) sold and conveyed unto their mother, Mrs. Zilmere Pitre, their royalty interests (each had inherited a 1/6144 interest), along with other property.
 

 Operations for drilling on the land in question were commenced by the Union Sulphur Company, Inc., the lessee, on August 8, 1944; actual drilling was begun August 26, 1944; and the well so started was completed as a producer on October 5, 1944.
 

 It is conceded in this court by counsel for Eugene Lognion (in oral argument, in his brief, and in an answer to the appeal) that the royalty interest which Dorothy Bell Pitre inherited (1/6144), and later conveyed to her mother, has not been lost by
 
 *320
 
 prescription. In this connection the record shows, as above pointed out, that the original royalty deed from Lognion to Pitre was dated September 12, 1934; that at the time of Pitre’s death on August 24, 1939, Dorothy Bell Pitre was 19 years and some months of age; that she was emancipated on October 16, 1939; and that the well was completed as a producer of oil on October 5, 1944. Thus, assuming that prescription is suspended as to a minor, Dorothy Bell Pitre owned a 1/6144 interest for 52 days while a minor (between the dates of her father’s death and the judicial emancipation) ; and when this period of suspension is considered in computing prescription from the date of the original royalty deed to that of the well’s completion it must be concluded that, as to her interest, the required ten years did not elapse.
 

 As to the remainder of the royalty interest asserted by Mrs. Pitre and also as to the claims of Houssiere and Zimmerman, counsel for those persons, to quote from their brief, contend:
 

 “(a) That a mineral royalty interest is a servitude and thus indivisible, that prescription does not run against a servitude owned by a minor, and that, the prescription having been suspended as to the minor, it was suspended as to the major co-owners.
 

 “(b) That if a mineral royalty interest is not a servitude, it is a real right which, like a servitude, is indivisible and that, since the liberative prescription of ten years could not run against the minor, it was suspended also as to the major co-owners of the minor.
 

 “(c) That actual drilling operations were commenced on said land on August 26, 1944, less than ten years from the date of the original royalty deed from Eugene Lognion to Clarphy Pitre (Tr. 210) and that such operations interrupted the prescription of ten years liberandi causa.”
 

 The first two contentions are answered adversely to those appellants in the cases of St. Martin Land Co. v. Pinckney, 212 La. 605, 33 So.2d 169, and Humble Oil & Refining Co. v. Guillory et al. (on rehearing), 212 La. 646, 33 So.2d 182 the decisions in which are today being rendered. In reaffirming the decision in Vincent et al. v. Bullock et al., 192 La. 1, 187 So. 35, we definitely hold in such cases that a mineral royalty (as distinguished from mineral rights) is not a servitude; and, hence, the legal principle that the minority of a person effects a suspension of prescription as to his major co-proprietors, which is found in Civil Code, Article 802 and relates exclusively to servitudes, is inapplicable to it.
 

 Also without merit, in our opinion, is the third contention. If the interest acquired by Clarphy Pitre from the landowner had been mineral rights (a servitude under our jurisprudence), the matter of the commencement of drilling operations, would be of importance. The operations would have constituted a use of the serv
 
 *321
 
 itude — and exercise of the rights obtained —such as is made necessary by Civil Code, Articles 789 and 3546 to prevent the loss of the servitude through the liberative prescription of ten years. Lynn v. Harrington et al., 193 La. 877, 192 So. 517. But since Clarphy Pitre’s interest was only a mineral royalty (not a servitude), the doctrine relating to the exercising or use of the rights is inapplicable, and the incident referred to herein of commencing drilling operations is of no moment. What Pitre acquired was merely the right to share in the production of oil, gas and other minerals if and when they were produced. To receive the benefits of his interest no active efforts whatever were required on his part. His role was entirely passive; his right was dormant until production resulted. Thus, the date of the original royalty deed and that of production were the determining factors respecting the issue of the prescriptibility of his interest. And since more than ten years intervened between those dates the rights of those holding under and through him (except the minor, Dorothy Bell Pitre), were lost.
 

 Proceeding now to a consideration of the other controversy litigated in this cause, we find from the record that on September 24, 1934, Eugene Lognion, the landowner, executed an instrument reciting a conveyance to Jules O. Daigle of
 
 “Yis&
 
 of the oil, gas and other minerals, in and under and that may be produced from * * * ” the land in question and other described tracts. The sale was made, according to the act, for the sum of $55.00 cash and other good, valuable and sufficient considerations.
 

 Later, specifically on October 16, 1936, both of those persons signed another instrument styled a “Correction Deed” in which Lognion was referred to as vendor and Daigle as vendee. Therein, the act of sale of September 24, 1934, was mentioned and described; then the subscribers agreed and stipulated:
 

 “Whereas, it now appears that the said Act of Sale does not correctly describe and define the property which was intended-to be conveyed for the reason that the said act describes the property conveyed as being %56 of the oil, gas and other minerals in and under and that may be produced from the said described lands, whereas it was intended that the said act should describe the property conveyed as being %56 royalty interest in and to all the oil, gas and other minerals in, under and which may be produced and saved from the said described tract of land.
 

 “Now, therefore, in consideration of the premises, and for the purpose of correcting the recitals in the said original Act of Sale and for the purpose of conveying the property which was actually intended to be conveyed, the vendor herein does by these presents declare that he did intend in the said original Act and does now by these presents grant, bargain, sell, convey and deliver with full guarantee and warranty of title and possession and with complete
 
 *322
 
 transfer and subrogation to all the vendor’s rights and actions of warranty against all former owners and vendors, unto the vendee, Jules O. Daigle, his heirs and assigns, the following described property, to-wit:
 

 642
 

 “One-two hundred fifty-sixth (J&se) royalty interest, being equal to and being one-two hundred fifty sixth (Jibe) of all the oil, gas and other minerals in, under and that may be produced and saved from the following described tracts of land, situated in Jefferson Davis Parish, Louisiana, to-wit:”
 

 (Here follows the land described in the act of September 24, 1934).
 

 Further in the instrument of October 16, 1936, it was recited:
 

 “And now the vendee, the said Jules O. Daigle, appears herein and accepts the said property as herein set out and with the provisions of this present act.
 

 “It is further stipulated that the above mentioned original Act of Sale is and shall be null and void in so far as the same may be in conflict with the provisions of this Act.”
 

 On January 6, 1937, still another correction deed (so styled at its top) was jointly executed by Lognion, as vendor, and Daigle, as vendee. .It described in detail both the original act of sale and the first correction deed, and thereafter recited:
 

 “Whereas it now appears that neither the said Act of Sale nor the Correction Deed above mentioned correctly describe and define the property which was actually intended to be conveyed for the reason that the said Act of Sale, as amended by the said Correction Deed, describes the property conveyed as being One-two hundred fifty-sixth (1/256) royalty interest in and to all the oil, gas and other minerals in, under and to be produced and saved from the said described tract of land, whereas it was intended that the said Act of Sale and Correction Deed should describe the property conveyed as being One-five hundred twelfth (1/512) royalty interest in and to all the oil, gas and other minerals in, under and which may be produced and saved from the said described tract of land:
 

 “Now, therefore, in consideration of the premises, and for the purpose of correcting the recitals in the said original Act of Sale and the said Correction Deed, and for the purpose of conveying the property which was actually intended to be conveyed, the vendor herein does by these presents declare that he did intend in the said original Act and by the said Correction Deed and does now by these presents grant, bargain, sell, convey and deliver with full guarantee and warranty of title and possession and with complete transfer and subrogation to all the vendor’s rights and actions of warranty against all former owners and vendors, unto the vendee, Jules O. Daigle, his heirs and assigns, the following described property, to-wit:
 

 “One-five hundred twelfth (1/512) royalty interest, being equal to and being one-
 
 *323
 
 five hundred twelfth (1/512) of all the oil, gas and other minerals in, under and that may be produced and saved from the following described tracts of land, situated in Jefferson Davis Parish, Louisiana, to-wit:”
 

 (Here follows a recitation of the same land described in each of the previous acts.)
 

 Further, in this second correction deed, the parties stipulated:
 

 “And now the Vendee, the said Jules O. Daigle, appears herein and accepts the said property as herein set out and with the provisions of this present act.
 

 “It is further stipulated that the above mentioned original Act of Sale and Correction Deed are and shall be null and void in so far as the same may be in conflict with the provisions of this Act.”
 

 Counsel for Jules O. Diagle do not urge that their client acquired mineral rights (a servitude) under those transactions. They claim for him the acquisition of only a royalty interest of 1/512. But they argue, first, that the instruments dated October 16, 1936 and January 6, 1937, respectively, created new rights, i. e., rights arising subsequently to those conveyed in the original deed of September 24, 1934; and that, since the producing well of October 5, 1944, was completed within ten years from the dates of the creation of the new rights, prescription has not run.
 

 Our appreciation of the instruments relied on is that they amounted to nothing more than efforts to correct errors previously committed. Each, at its top, is styled “Correction Deed”; and the very verbiage employed therein discloses clearly a desire to carry out an intention sought to be, and which should have been, evidenced by the original deed. This conclusion is fortified by the fact that neither recites any new or specific consideration. True, both correction deeds declare that the original act of sale, insofar as it conflicted, was “null and void”; but this is unimportant. The declaration was mere surplusage, for without it the original deed would have been superseded just as effectively. The new acts were executed, obviously, to stand in stead and in place of the first deed and to carry out the original intention of the contracting persons. They did not purpose or effect the creation of new rights.
 

 Counsel further argue, in the alternative, that the two correction deeds amounted to an acknowledgment such as would interrupt the prescription of ten years then running. To interrupt the current of that prescription the mere acknowledgment of the existence of the right is insufficient. There must appear also an intention of the person making the acknowledgment that the accruing prescription be interrupted. Bremer v. North Central Texas Oil Co., Inc., et al., 185 La. 917, 171 So. 75; Goldsmith v. McCoy, 190 La. 320, 182 So. 519; Vincent et al. v. Bullock, supra. Neither of the correction deeds discloses the existence of such an intention. ’ If an intention of that kind had existed (the
 
 *324
 
 vendee testified that it did, but the landowner emphatically denied this) clearly a declaration evidencing it would have been incorporated in one or both of the correction deeds.
 

 Lastly, and again alternatively, counsel contend that the commencement of drilling operations on August 26, 1944, interrupted the running of prescription. For the same reasons given hereinabove in connection with our discussion of the claims of Mrs. Pitre, Houssiere and Zimmerman, those operations in no manner prevented the accrual of prescription .which resulted prior to the well’s completion.
 

 For the reasons assigned the judgment of the district court is reversed insofar as it decreed Jules O. Daigle to be the owner of a 1/512 royalty interest, and there is now judgment sustaining the plea of prescription of Eugene Lognion as to that interest and recognizing him as the owner thereof, entitled as such to be paid proportionately out of the funds deposited in the registry of the court.
 

 As it respects the controversy between Eugene Lognion, on the one hand, and Mrs. Zilmere Pitre, Charles R. Houssiere and Paul Zimmerman, on the other, the judgment of the district court is affirmed.
 

 All costs shall be paid out of the deposited funds; however, Eugene Lognion is granted judgment against the said Mrs. Pitre, Houssiere and Zimmerman for one-half of such costs and against Jules O. Daigle for the remaining one-half, pursuant to the provisions of Act No. 242 of 1944.