FOURNET, Chief Justice.
 

 The Union Sulphur Co., Inc., as the assignee of a mineral lease covering a 120-acre tract of land located in Section 51, Township 7 South, Range 1 East, Acadia Parish, Louisiana, availing itself of the provisions of Act 123 of 1922, impleaded the owners and lessors of the property, Arthur J. Lavergne, Lee Lavergne, and Raoul E. Lavergne, and also the present record owners of a l/32nd royalty interest conveyed by said landowners to E. W. K. Andrau by instrument dated December 4, 1935; and deposited in the registry of court certain funds in its possession realized from the sale of oil and gas produced by it under the lease and representing the l/32nd royalty interest here in dispute, obtaining an order of court to continue making similar deposits until such time as the ownership of the funds should be determined. The contest is between the landowners on the one hand, and Andrau and others who ac
 
 *671
 
 quired fractions of his interest hy mesne conveyance, on the other hand.
 

 The defendant landowners answered, claiming that the interest conveyed by them to Andrau had expired, terminated and become extinguished since more than ten years had elapsed from the time they sold and conveyed the royalty rights to Andrau before any oil, gas or other minerals were produced. The other defendants, Andrau and his assignees, also answered, claiming that under drilling operations commenced in October, 1945, oil and gas were produced prior to the lapse of ten years from December 4, 1935, and that thereby prescription had been interrupted. In the alternative these defendants contend that if it should be determined that oil and gas were not produced before the lapse of ten years, the discovery of oil and gas prior to the lapse of that period interrupted the running of prescription; and in the further alternative, if it should be determined that oil and gas were neither produced nor discovered within the ten-year period, then they claim that the drilling operations which were commenced long before the expiration of that period and which resulted in the definite production of oil and gas interrupted prescription and preserved their royalty rights and mineral interest in the land.
 

 There was judgment in the lower court sustaining the plea of ten years’ liberative prescription filed by the landowners, decreeing them to be the owners of the royalty rights and interest conveyed to Andrau on December 4, 1935, and therefore owners of the funds; and decreeing that they have judgment against the other defendants proportionately for costs. From that judgment all royalty claimants appealed.
 

 The facts of the case are neither disputed nor controverted, and are substantially as alleged in the petition. On December 4, 1935, E. W. K. Andrau acquired from the above-named owners a royalty interest in the property of “l/32nd of the whole of any oil, gas or other minerals * * * on and under and to be produced from said lands.” Of this royalty interest Andrau subsequently assigned a portion, so that each of the following named persons is the claimant of the fractional interest appearing next to his or her name: E. W. K. Andrau, 7/1024ths; G. R. Henson, 7/1024ths; Harry C. Shultz, l/384th; G. B. Dejean, l/384th; Paget Cady, 1/1536th; Mrs. Aletta S. Root, l/1536th; Peter Conner, l/1536th; and C. F. Sentz, l/96th. (The interest of Mr. Sentz, now deceased, is represented by two co-administrators.)
 

 On June 8, 1941, I. J. Goode acquired a gas, oil and mineral lease on the property, and on July 12, 1941, he assigned the lease to the Union Sulphur Company. Drilling operations under this lease were commenced by the Company on October 19, 1945, and on about November 3, 1945, when the well had reached a depth of 8,902 feet,
 
 *673
 
 an unsuccessful attempt was made to complete the well as a producer. Other at-' tempts of a similar character and with similar results were made during that month, although traces of oil and gas were indicated by these operations as well as by certain scientific tests. Following these unsuccessful attempts, further operations and tests were conducted at a shallower depth, and on December 5, 1945, the well flowed quantities of liquid consisting principally of water with a trace of oil. By early morning of December 6, 1945, the well was producing large quantities of liquid containing approximately 95% salt water and 5% oil, and by 1 p. m.
 
 on
 
 that date it was producing at the rate of 130 barrels of fluid per day, containing 65% salt water and 35% oil, as well as 580,000 cubic feet of gas. The well was completed on December
 
 7,
 
 1945, and the official gauge of the well, made on December 11, 1945, showed that it was then producing 40 barrels of oil and 249,000 cubic feet of gas per day.
 

 It is the contention of the appellants that since the evidence shows that while making tests of the well, gas was produced on November 23 and again on December 2, 1945, within the ten-year period, prescription was interrupted regardless of the fact that production was not in paying quantities and also regardless of the fact that the gas was not saved, since there are no such requirements as to royalty rights (as opposed to mineral leases) under existing jurisprudence. Alternatively, they. urge that if the above-mentioned production of gas and oil did not constitute the production contemplated by the parties in the contract of December 4, 1935, it did constitute discovery of minerals; and that this discovery, followed by actual production of minerals, is sufficient to interrupt the prescription liberandi causa against a royalty right.
 

 As pointed out by the author hereof in the case of Byrd v. Forgotson, 213 La. 276, 34 So.2d 777, 779, “When oil was first discovered in this state and the interests of those asserting rights therein became controversial, the courts decreed' that the sale of a mineral was nothing more than the granting of a right or privilege to go upon the land for exploration and exploitation purposes, classified such a right as being in the nature of a servitude, and applied the provisions of the Revised Civil Code relative to servitudes in determining the rights of those claiming such an interest. One such provision is that the right to a ‘servitude is extinguished by the non-usage of the same during ten years’ (Article 789), such prescription beginning to run from the day the servitude ceases to be used. Article 790.” See
 
 Frost-Johnson
 
 Lumber Co. v. Sailing’s Heirs, 150 La. 756, 91 So. 207; Nabors Oil & Gas Co. v. Louisiana Oil Refining Company, 151 La. 361, 91 So. 765; and Wemple v. Nabors Oil & Gas Co., 154 La. 483, 97 So. 666. Following these decisions. —whether it be that those purchasing such rights desired to avoid the effect of that ju
 
 *675
 
 risprudence, or whether landowners did not wish to be burdened with co-owners of minerals, whose signatures to leases were required when these rights were to be exploited, and with whom they had to share the bonuses paid — those dealing with minerals devised the sale and purchase of the so-called royalty, whereby the landowner, or the mineral owner, or a lessor, or a lessee, sold or reserved a certain royalty interest consonant with his holding.
 

 The first case on that subject, namely, Vincent v. Bullock, 192 La. 1, 187 So. 35, came to us for consideration in 1938 and fell to this author for the writing of the opinion. Because of the issues involved, which had not up to that time been squarely presented, the case created much interest in the legal fraternity, voluminous briefs were filed not only by counsel for plaintiffs and defendants but by amici curias .as well, and we were favored with treatises and works on the subject matter by professors of law of three universities. After making a study of these, as well as devoting much time to independent research, we determined that such a sale with royalty reservation, not being forbidden by law, constituted a contract which' was to be given legal effect according to the intent of the parties, and concluded that from its nature and by the express provisions therein, such a royalty reservation imposed on the property a real obligation, since it was .attached to an immovable, and passed with the property, conditioned upon the production of oil and gas or other minerals; but if such condition did not happen within ten years, such royalty interest was lost by the prescription of ten years. This conclusion has met with the general approval of the bench and bar throughout the State.
 

 Following the above decision this Court has had similar interests under consideration where we had occasion to determine the rights of the holder of such an interest, and in each instance concluded that the right of the owner of such an interest “is restricted to a sharing in production if and when it is obtained by the landowner or a lessee.” Humble Oil & Refining Co. v. Guillory, 212 La. 646, 33 So.2d 182, 193, on rehearing 212 La. 659, 676; Union Sulphur Co. v. Lognion, 212 La. 632, 33 So.2d 178; Continental Oil Co. v. Landry, 215 La. 518, 41 So.2d 73. In the Lognion case it was also held that drilling operations did not interrupt the running of such prescription. Therefore, since the sale or reservation of a royalty by a landowner is the mere sale or reservation of a right to share in the production of minerals if and when produced, and under the jurisprudence of this State if the event does not happen within ten years the’ right to share in such production is lost, and drilling for such production does not interrupt the prescription then accruing, of necessity the incidents to the drilling operations that show indications of the presence of oil, gas or other minerals cannot have the effect of
 
 *677
 
 interrupting the running of such prescription.
 

 For the reasons assigned, the judgment appealed from is affirmed.
 

 MOISE, J., absent.