88 So.2d 377

Elino LE BLANC et al.

v.

HAYNESVILLE MERCANTILE COMPANY,
Inc., Trustee.

No. 42396.

May 7, 1956.

Rehearing Denied June 11, 1956.

Walter B. Gordy, Jr., Abbeville, W. S. Waller, W. M. Phillips, Shreveport, for appellant.

Kibbe & Bailey, Abbeville, for plaintiffs-appellees.

FOURNET, Chief Justice.

The defendant, Haynesville Mercantile Company, Inc., Trustee, is appealing from

a judgment of the district court decreeing a certain mineral royalty interest conveyed to it on March 19, 1940, by instrument executed in its favor by the landowners, plaintiff Elia Dugas and her husband, Alcide LeBlanc,[1] to have prescribed, and in addition ordering it to pay attorney's fees of $300. The case was submitted to the trial judge on an agreed statement of facts which are stipulated in the record and are substantially as follows:

The royalty interest in dispute conveyed a 1/64th of the oil, gas or other minerals on, under and to be produced from three tracts of land (one in Sec. 25, two in Sec. 26, T. 13 S., R. 4 E.) in Vermilion Parish, subject to a lease then affecting the lands, but not limited to royalties accruing under said lease—the rights granted in the deed to "remain a charge and burden on the land * * * and binding on any future owners or lessees." The grantors reserved the right to grant future leases affecting the lands, "so long as there shall be included therein, for the benefit of the grantee herein the royalty rights herein conveyed;" and the grantors further reserved "the right to collect and retain all bonuses and rentals paid for or in connection with any future lease or accruing under the lease now outstanding."

On February 16, 1945, Elia Dugas and Alcide LeBlanc executed an oil, gas and mineral lease, having a primary term of five years from date, in favor of Union Oil Company of California, covering the land included in the royalty deed described above, along with other lands; a provision of the lease (Paragraph 3) stipulated that in the event gas was discovered for which there was lack of a market at the well, the lessor could pay to the lessee, on or before the first of January of each year after production had ceased for lack of market, $100 "as royalty for each such well, * * * and while such royalty is so paid such well or wells shall be considered as producing in commercial quantities for all purposes hereunder." The lease was amended on August 5, 1948, to provide that "in lieu of the shut-in gas royalty clause" (Paragraph 3), "Lessee may maintain its rights hereunder from month to month" if there were on the leased land a well capable of producing gas or gas condensate and the lease was not then being maintained by production or by operations on the land, by paying lessors "for rentals herein elsewhere named a sum equal to 1/12th of the amount of annual rentals" based on the number of acres then covered by the lease, "each payment to extend Lessee's rights for a period of one month from the due date thereof

1. Before suit was filed, Alcide LeBlanc had died and the children of the union were jointed in this suit as parties plaintiff; those children were substituted additionally to take the place of their mother, Elia Dugas, who died during the pendency of the suit, and are Elino LeBlanc, Emite LeBlanc, Carmelite LeBlanc, Simonet LeBlanc, Lorina LeBlanc, Claude LeBlanc and Martha LeBlanc.

\* \* \*." In lieu of another paragraph (No. 5) of the original agreement, under which the lessee had been given the right to combine leases, royalty and mineral rights to create one or more operating units of 40 acres, there was substituted a paragraph amplifying the original provisions, again granting to lessee the right to pool or combine the "acreage, royalty, or mineral interest covered by this lease, or any portion thereof, with other land, lease or leases, royalty and mineral interests in the immediate vicinity thereof \* \* \* to form one contiguous body of land for each unit" not to exceed substantially 320 acres each for each gas or gas-condensate well—lessee to execute and record an instrument identifying and describing the pooled acreage, "and upon such recordation, the unit or units shall thereby become effective." The paragraph further provided "Lessor shall receive \* \* \* regardless of whether or not such production is from any part of the land hereinabove described, a royalty equal to such portion of a one-eighth royalty as the number of acres out of this lease and included in any such operating unit bears to the total number of acres included in the respective operating unit. \* \* \* such portion of a one-eighth royalty shall be in lieu of any other royalties which would accrue to Lessor hereunder on account of production of oil, gas, \* \* \*." Production from any portion of the unit was to have the same effect as if a well were commenced or completed on the land embraced by the lease.

The lease was maintained to February 16, 1950, by delay rental payments, timely made by the lessee. On February 13, 1950, the lessee executed and had recorded a declaration of unitization, creating, for the purpose of production of gas, the "A. D. LeBlanc Unit III." That unit included a portion of the property covered by the royalty sale to the defendant and by the mineral lease to the Union Oil Co. of California, and embraced land on which there was already a well, one which had been brought in some 7 months before, on July 30, 1949, and which, though capable of producing gas and condensate in paying quantities, had been immediately shut in, after testing, for lack of a market. That well, located on acreage belonging to A. D. LeBlanc and others, is known as "A. D. LeBlanc No. 1."

The lease having been maintained to February 16, 1950, as mentioned above, by delay rental payments, beginning on that date and continuing to January 16, 1951, the plaintiff received timely monthly "shut-in" gas royalty payments; on January 18, 1951, the well was placed in production and has continued to produce gas and condensate in commercial and paying quantities. While the defendant did not join in either the original lease to the Union Oil Co. of California, or the amendment thereto, all parties recognize that the lease is valid and subsisting, in full force and effect; the royalties accruing to defendant under its terms have been held in suspense pending the outcome of this suit.

Following trial on the merits—in which the plaintiff contended that the royalty interest conveyed to the defendant on March 19, 1940, had prescribed because of non-production during the ten year period following the sale and that those rights had reverted to the owners of the land as of March 19, 1950; and defendant resisted on the ground that prescription had been interrupted (a) by the declaration of unitization recorded by the lessee on February 13, 1950, (b) by the payment of delay rentals and "shut-in" gas royalties under the lease as amended, (c) by completion of the A. D. LeBlanc No. 1 well as a producer on July 30, 1949, and (d) by production from that well beginning on January 15, 1951—the trial judge held that "Such production as was incidental to the completion and testing of the well is not sufficient to enable the royalty owner to share in such production, and will not be considered sufficient to interrupt the running of prescription." Attorney's fees were allowed, under the authority of LSA-R.S. 30:101,[2] as a result of the refusal of the defendant, despite demand more than thirty days prior to institution of suit, to furnish plaintiffs with an acknowledged instrument directing the cancellation of the royalty deed.

The defendant-appellant is still contending that production began during the ten year period and has been continuous ever since and that its rights have been preserved thereby, arguing that under the plain provisions of the lease there was production, that it was evidenced by the "shut-in" gas royalty payments made by the lessee, and that the inclusion within a validly unitized area of land on which there was a well capable of producing gas in paying quantities interrupted prescription. Counsel submit that this Court has already decided the point favorably to the defendant in the recent case of Union Oil Company of California v. Touchet, 229 La. 316, 86 So.2d 50.

The plaintiffs-appellees, on the contrary, contend that the creation of the A. D. LeBlanc Unit III did not, and could not, have the effect of interrupting prescription against the royalties claimed by defendant, arguing that in the creation of said unit there was no privity of contract between plaintiffs and defendant; that the defendant did not authorize the pooling of its royalties into a unit and cannot now take advantage of the provisions of a lease authorizing the creation of such a unit for the purpose of interrupting prescription; and that they, the plaintiffs-landowners, had no power to

2. "Whenever, by reason of the accrual of prescription, any mineral rights expire, the owner or claimant thereof shall within thirty days after written demand by the land owner furnish him with an acknowledged instrument, directing the cancellation of these mineral rights on the records. Thereafter, if the owner or claimant shall fail or refuse to comply within thirty days, he shall be liable to the land owner for a reasonable attorney's fee incurred in bringing suit to have the cancellation adjudged. * * * "

authorize pooling in so far as defendant's rights were concerned, those rights having arisen under a royalty sale which had taken place years before and which specifically secured, as to any future leases, the royalty rights therein conveyed and prohibited the plaintiffs-landowners from entering into any lease contract without the consent of the defendant as a result of which the defendant would receive less than the ⅟₆₄th royalty interest conveyed to it—which was exactly the effect produced by the unitization, since the ⅟₆₄th royalty was "reduced and spread out over the 320.19 acres contained in the entire unit." In addition, counsel now advance the alternative plea (not specially pleaded nor ruled on by the trial judge, and urged here for the first time) that should this Court hold prescription was interrupted, then the interruption affected only that portion of the land which was included in said unit, and not the remainder of the acreage covered by the royalty deed but not so included.

■ In Vincent v. Bullock, 192 La. 1, 187 So. 35, this Court was squarely faced with a determination of the legal attributes of the type of royalty reserved by a vendor in the sale of his land, as distinguished from royalty which was the consideration for a lease or which arose from or accompanied such a contract; and we held that such a reservation was not a servitude but was governed by the rules of suspensive conditional obligations, and subject to prescription of ten years liberandi causa if the event did not happen prior thereto. The rule announced in that case was reapproved in general principles and extended to cover the converse situation—that of a sale instead of a reservation of royalty with no right to search the land—in Humble Oil & Refining Co. v. Guillory, 212 La. 646, 33 So. 2d 182, and its companion cases, St. Martin Land Co. v. Pinckney, 212 La. 605, 33 So.2d 169, and Union Sulphur Co. v. Lognion, 212 La. 632, 33 So.2d 178. It is also well settled that the right to search and explore, which belongs to the owner of the servitude, is not given to the royalty owner; that the latter must await such time as the land has been developed, and his right is restricted to a sharing in production if and when it is obtained by the landowner or a lessee, Vincent v. Bullock, supra; Union Sulphur Co. v. Andrau, 217 La. 662, 47 So. 2d 38, and authorities cited therein. It follows that the defendant was not a necessary party to the lease, Gulf Refining Co. v. Goode, 212 La. 502, 32 So.2d 904, the landowners having full power to enter into any lease contract they saw fit affecting the property—and that would include the power to grant a lessee the authority to pool and combine the leased acreage or any portion thereof with any lands or leases and mineral interests in the immediate vicinity— subject only to the right of the royalty owner to receive its ⅟₆₄th of the oil, gas or other minerals allocated to the acreage included in the unit.

■ The well designated A. D. LeBlanc No. 1 was capable of producing gas and gas condensate in paying quantities, and was on land included within the unit which was formed within ten years from the date of the royalty sale; consequently, the defendant was entitled to $\frac{1}{64}$th royalty. The fact that the well was shut in for want of a market and that no gas was sold from it until after the expiration of ten years from the date of the royalty sale cannot defeat the rights of the defendant to share in the production, once begun. Sohio Petroleum Co. v. V. S. & P. R. R., 222 La. 383, 62 So. 2d 615; Union Oil Company of California v. Touchet, 229 La. 316, 86 So.2d 50; and it has been held in numerous cases [3] that mineral leases are maintained beyond their primary term when the leased tracts are embraced within legally established units on which there is production in paying quantities, even though no drilling is conducted on the tracts themselves.

■ The alternative plea (that the interruption of prescription affected only that portion of the land included within the unit), having been neither urged below nor passed upon by the trial judge, and not having been specially pleaded here, presents nothing for our consideration.

For the reasons assigned, the judgment appealed from is reversed and set aside, and the plaintiffs' suit dismissed.

3. See Boddie v. Drewett, where the authorities are cited in sequence;