177 So.2d 118

Ralph B. LEE et al.

v.

L. T. GOODWIN.

No. 47795.

July 14, 1965.

Dissenting Opinion July 29, 1965.

SUMMERS, J., is of the opinion that the writ should be granted and dissents from the Court's action.

SUMMERS, Justice (dissenting).

The question presented by this case (La. App., 174 So.2d 651) is whether the ten-year liberative prescription applicable to a mineral royalty interest is interrupted or suspended by the inclusion of the lands upon which the royalty interest is owing into a unit on which a well capable of producing is located, but from which there has been no production.

I am of the opinion that the simple inclusion of lands affected by an outstanding mineral royalty interest within a unit formed by the Commissioner of Conservation on which a well capable of producing has been drilled is not enough to interrupt or suspend the liberative prescription running against the royalty rights. There must be more. There must be actual or constructive "production"—as the term "production" is generally understood and defined in the industry—within the ten-year period.

Here the outstanding mineral royalty interest was created in a sale by the landowner. The sale of royalties under our law creates an obligation to pay a percentage of the proceeds of minerals produced from the lands affected. La.Civil Code arts. 2010–2013; Vincent v. Bullock, 192 La. 1, 18, 187 So. 35, 40 (1939). This obligation is, under the language of Vincent v. Bullock, supra, "conditioned upon the production of oil, gas, or other minerals." Though the contract does not fix a time within which the event must happen, it nevertheless creates a species of real right subject to the prescription of ten years liberandi causa within the meaning and contemplation of Articles 3528, 3529, 3549, 3556(20) (21), 3544 and 3546 of our Civil Code. See also St. Martin Land Co. v. Pinckney, 212 La. 605, 619, 33 So.2d 169, 172 (1947); 25 Tul.L.Rev. 30, 40 (1950).

In addition to the clear language of Vincent v. Bullock, which declares that "production" is the event which must occur to continue the mineral royalty interest beyond ten years, many cases have recognized and reiterated this rule of law. Commenting on the case of Vincent v. Bullock and the definition of mineral royalty announced therein, this court in St. Martin Land Co. v. Pinckney, 212 La. 605, 33 So.2d 169 (1947),

said: "We arrived at the conclusion that the right was not a servitude, but a conditional obligation depending on an uncertain event that prescribed in ten years if the event, *production of oil*, did not occur within that period of time." (Emphasis added.) In Gulf Ref. Co. v. Goode, 212 La. 502, 507, 32 So.2d 904, 906 (1947), we declared that the owner of royalty rights has "only the privilege of sharing in the minerals if and when produced." In Union Sulphur Co. v. Lognion, 212 La. 632, 639, 33 So.2d 178, 180 (1947) this court stated that the royalty owner acquired "merely the right to share in the production of oil, gas and other minerals if and when they were produced. To receive the benefits of his interest no active efforts whatever were required on his part. His role was entirely passive; his right was dormant until production resulted." Again in Humble Oil & Refining Co. v. Guillory, 212 La. 646, 673, 33 So.2d 182, 192 (1947), referring to a royalty owner we said: "All that he acquires is a right attached to the land and the assurance that he will receive his share of the oil produced therefrom if and when successful production results." In Continental Oil Co. v. Landry, 215 La. 518, 41 So.2d 73, 75 (1949) we said that the owner of a royalty interest has a right to "share in production if and when it is had." And in Union Sulphur Co. v. Andrau, 217 La. 662, 670, 47 So.2d 38, 40 (1950) this court declared that the sale or reservation of a royalty by a landowner is "the mere sale or reservation of a right to share in

the production of minerals if and when produced." More recently the Court of Appeal, Third Circuit, summarized the rule established by the jurisprudence of this court as follows:

"[A]ctual mineral production within the prescriptive ten years is necessary to interrupt the accrual of prescription against, and to maintain the existence of, the royalty right, Union Sulphur Co. v. Andrau, 217 La. 662, 47 So.2d 38; St. Martin Land Co. v. Pinckney, 212 La. 605, 33 So.2d 169; Vincent v. Bullock, 192 La. 1, 187 So. 35. (In the Andrau case, drilling had commenced 45 days before expiration of the ten years from date of the royalty sale, and from this drilling successful production resulted three days after the ten years had elapsed; the royalty interest was nevertheless held to have expired by failure of actual production within the prescriptive period.)" Cormier v. Ferguson, 92 So.2d 507 (La.App.1957).

In Union Oil & Gas Corp. of Louisiana v. Broussard, 237 La. 660, 112 So.2d 96 (1959), a nonparticipating royalty interest had been created by the landowner prior to a lease of the land for oil and gas. Speaking of the nature of this interest, the court said: "As stated in the leading case of Vincent v. Bullock, 192 La. 1, 187 So. 35, a mineral royalty interest is not a servitude, but is a species of real right which entitles the owner to participate

in production when and if production is obtained, and is subject to the prescription of 10 years liberandi causa. Such a right is a conditional obligation depending on an uncertain event and prescribes in 10 years in the event production of the minerals does not occur within that period of time." See 3A Summers Oil & Gas § 578 (1958).

The law was again summarized in Crown Central Petroleum Corporation v. Barouse, 238 La. 1013, 117 So.2d 575 (1960), when this court said:

"It is settled that the sale of * * * royalty * * * does not create a servitude but it is nevertheless governed by the rules of suspensive conditional obligations and subject to the prescription of ten years liberandi causa if the event, i. e., *the production of minerals from the land, does not occur prior thereto.*" (Emphasis added.)

Thus, production is the condition which is required to continue a mineral royalty interest in effect beyond the ten-year period; this has been repeated many times and is firmly fixed in our jurisprudence. 25 Tul. L.Rev. 30, 40 (1950); Daggett, Mineral Rights in Louisiana § 64 (rev. ed. 1949). "The owner of such an interest (non-participating royalty interest) is entitled to the described fraction of oil or gas *produced and saved.*" (Emphasis added.) 1 Kuntz Law of Oil and Gas § 15.4 (1962).

Furthermore, the royalty deed itself provides that royalties are payable from "oil, gas or other minerals produced from said land" and that the sale and transfer is of royalties "accruing" from said lands. The language in this contract sets forth "production" and "accrual of royalties". as the "condition" required to continue this royalty in effect beyond the ten-year period.

Contrary to the repeated announcements of this court and the language of the contract, the Court of Appeal in this case, reading Le Blanc v. Haynesville Mercantile Company, 230 La. 299, 88 So.2d 377 (1956), found that:

"* * * where a well was capable of producing gas and gas condensate in paying quantities and was located on land included within a unit which was formed within 10 years from the date of the royalty sale, the royalty interest did not prescribe, and the fact that the well was shut in for want of a market and that no gas was sold from it until after the expiration of 10 years from the date of the royalty sale could not defeat the rights of the grantee of the royalty interest to share in the production, once begun."

In the Haynesville case the landowner sold royalty on March 19, 1940, retaining leasing rights. On February 16, 1945, the landowner granted an oil and gas lease on the affected lands. This instrument contained a clause permitting lessee to pay certain sums instead of royalty in the event a gas well was brought in and had to be shut in for lack of a market. The provision

read: " * ·* * $100 'as royalty for each such well, * * * and while such royalty is so paid such well or wells *shall be considered as producing in commercial quantities* for all purposes hereunder.' " (Emphasis added.) Power to unitize was also granted to the lessee. On February 13, 1950, lessee exercised his right to unitize, and part of the land affected by the royalty in question was combined with land upon which a gas well had previously been successfully drilled but had been shut in for lack of a market. In–lieu payments were made until January 18, 1951, when the well was put into production. The landowner insisted that the royalty had expired by the lapse of ten years. In answer the court said:

"The well designated A. D. LeBlanc No. 1 was capable of producing gas and gas condensate in paying quantities, and was on land included within the unit which · was formed within ten years from the date of the royalty sale; consequently, the. defendant was entitled to 1/64th royalty. The fact that the well was shut in for want of a market and that no gas was sold from it until after the expiration of ten years from the date of the royalty sale cannot defeat the rights of the defendant to share in the production, once begun."

It is this language which the Court of Appeal relied upon to support its position. In my opinion the language of the Haynes-

ville case is applicable only to the facts of that case. There was "production" within the ten-year period in that case, for the lease itself provided for shut-in payments "as royalty". These in-lieu payments, when made, evidenced the understanding of the parties that the shut-in well "shall be considered as producing in commercial quantities." The unit was created on February 13, 1950; the lease had been maintained by rental payments through February 16, 1950; beginning on that date and continuing to January 16, 1951, the plaintiff received timely monthly "shut-in" gas royalty payments; on January 18, 1951, the well was placed in production. The royalty interest was due to prescribe on March 19, 1950; shut-in gas royalty payments were received by plaintiff on February 16, 1950. These payments were made, and, under the lease contract, their effect was that the well "shall be considered as producing." Hence, there was "production" in legal contemplation prior to the expiration of the ten-year liberative prescriptive period, and, therefore, the royalty did not prescribe.

In commenting on shut-in royalty payments, this court said in Davis v. Laster, 242 La. 735, 138 So.2d 558, 96 A.L.R.2d 332 (1962):

"The very purpose of the shut-in well clause of oil and gas leases is to permit the lessee to maintain the lease *as though it were producing.* * * * Shut-in wells enable the (lessee) to maintain the lease by the payment of

shut-in royalties and hence the production, though not actual, is a substitute for actual production and is, therefore, constructive production." (Emphasis added.)

In Odom v. Union Producing Company, 243 La. 48, 141 So.2d 649 (1962), on rehearing, we gave Le Blanc v. Haynesville the same interpretation which I have outlined, when we said: "The shut-in well *with the consequent accrual of lieu royalty was equivalent to production* from all tracts within the unit. See Le Blanc v. Haynesville Mercantile Company, 230 La. 299, 88 So.2d 377." (Emphasis added.)

One other expression of this court might lend support to the Court of Appeal decision. It is contained in Union Oil Company of California v. Touchet, 229 La. 316, 325, 86 So.2d 50, 53 (1956), and is as follows: "The completion of a well capable of producing oil and gas in paying quantities constitutes production, and, if such a well is completed within 10 years of the royalty sale, the royalty owner is entitled to share in the production from it."

The foregoing statement by the court is dicta, and was unnecessary for its decision. It should not and cannot have the effect of altering the long-settled law existing prior to that time.

Discovery of a well capable of producing oil and gas in paying quantities is not "production" in fact or in legal contemplation. There is a vast difference between "production" and a well "capable of producing,"

and it is this difference which is pertinent here. Morrison v. Swaim, 220 S.W.2d 493 (Tex.Civ.App.1949). Production does not mean a well which is capable of producing, it means a well which is *actually producing* on the crucial date. Sellers v. Breidenbach et al., 300 S.W.2d 178 (Tex.Civ.App.1957); Archer County v. Webb, 161 Tex. 210, 338 S.W.2d 435 (1960); Home Royalty Assn. v. Stone, 199 F.2d 650 (10 Cir. 1952). What is intended in a sale of royalty is that "if the interest proves to be productive within the fixed term the interest is to endure so long as it yields tangible benefits in the form of royalty payments or payments in lieu of royalty * * *." 1 Kuntz Law of Oil and Gas § 15.8 (1962). It is the grantee's right to enjoy the proceeds within the time limit fixed by law; and if there is no enjoyment of those proceeds within that time, the liberative prescription relieves the land of the obligation created by the sale of royalty. It is plain that the discovery of a well capable of producing which is not producing in fact, or constructively by payment of shut-in royalties, yields no immediate tangible benefit in the form of royalty payments to the owner of the royalty interest.

The only authority cited by this court for its statement in Union Oil Company of California v. Touchet is the case of Sohio Petroleum Co. v. V. S. & P. R. R., 222 La. 383, 62 So.2d 615 (1952). There we said that a unit established by the Department of Conservation was a developed area as long as a well is located thereon which is

capable of producing oil or gas in paying quantities. Undoubtedly this is true, for R.S. 30:9(B) so states in these words:

"For the prevention of waste and to avoid the drilling of unnecessary wells, the commissioner shall establish a drilling unit or units for each pool, except for those pools which, prior to July 31, 1940, had been developed to an extent and where conditions exist making it impracticable or unreasonable to use a drilling unit at the present stage of development. A drilling unit, as contemplated herein, means the maximum area which may be efficiently and economically drained by one well. *This unit shall constitute a developed area as long as a well is located thereon which is capable of producing oil or gas in paying quantities.*" (Emphasis added.)

What the latter sentence means, as I understand it, is that as long as there is a well capable of producing oil or gas within a unit area, no other wells can be drilled thereon (to the same pool) because the area is a developed area; and another well to the same pool would be "waste"—something the commissioner must prevent. That language has no relation to the meaning of production as applied to the liberative prescription of a royalty interest. How can the phrase, "this unit shall constitute a developed area as long as a well is located

thereon which is capable of producing oil or gas in paying quantities," become "the completion of a well capable of producing oil and gas in paying quantities constitutes production"?

From the foregoing it is clear to me that the majority was in error when it refused to grant a writ to review and reverse the judgment of the Court of Appeal.

Royalty is the right to share in production when it is obtained. I cannot conceive how the royalty owner can share in a well capable of producing but which has not produced in fact, or constructively by the payment of shut-in royalties.

The result reached by the Court of Appeal, which the majority has refused to review, makes it possible for a royalty interest to be kept alive by a well "capable of producing," so long as that well exists, even though the royalty owner has not enjoyed any proceeds of production. In this case eight months had elapsed from the date the royalty interest would have expired until production commenced. But what is there about the rule announced by the Court of Appeal which would prevent keeping this royalty right alive indefinitely? In my view this result is contrary to the established policy of the State which limits the life of a royalty interest to ten years when there has been no production.

I respectfully dissent from the refusal to grant the writ.