PITMAN, J.
Plaintiff George M. Gilmer, Jr., appeals the judgment of the trial court which granted motions for summary judgment filed by Defendants, Principle Energy, L.L.C., f/k/a/ Regal Energy, L.L.C. ("Principle"), and Classic Production Services, Inc. ("Classic"), finding that the drilling of a shut-in well, which had been tested for production of minerals, interrupted prescription on a royalty interest. Plaintiff also appeals the trial court's denial of his cross-motion for summary judgment. For the following reasons, we affirm the judgment of the trial court.
FACTS
On April 1, 2008, Plaintiff signed a royalty conveyance of 50 percent of 1/5th of 8/8ths interest in six tracts of land in DeSoto Parish to Regal Energy, L.L.C. The conveyance stated that the deed "shall have a prescriptive period of three (3) years, rather than ten (10) years ordinarily provided under Louisiana law. A shut-in well shall perpetuate the term of this Deed." Regal Energy, L.L.C., subsequently changed its name to Principle Energy, L.L.C.
On October 13, 2008, XTO Energy, Inc. ("XTO"), spudded the E. B. Brown, et al. No. 1 Well ("the Brown well") on Plaintiff's property, and the well was completed on January 23, 2009. The Brown well was tested by FESCO, Inc., on January 28-29, 2009, by an open-flow surface production test. The test showed that the well could produce 1,156 thousand cubic feet ("MCF") per day. The well was never placed in production due to lack of a pipeline and was classified by the Louisiana Department of Conservation as a shut-in well waiting on pipeline. Another type of test, a DT-1 surface production test (deliverability test), was not performed on the Brown well. On June 30, 2009, the Louisiana Commissioner of Conservation issued Order No. 191-H-45, which created the HA RA SU58 unit and designated the Brown well as the unit well. The order stated that its *1141 effective date was "on and after May 12, 2009."
In November 2010, the Louisiana Commissioner of Conservation issued Order No. 191-H-129, which authorized Chesapeake Operating, Inc. ("Chesapeake"), to drill and operate a well called the Davis 17-15-14H Well No. 001-Alt ("the Davis well") as an alternative unit well for the HA RA SU58 unit. The Davis well was spudded on October 13, 2010, and completed on April 30, 2011. Since then, the Davis well has produced in paying quantities. On July 8, 2011, Principle conveyed a portion of its interest to Classic.
Since the royalty conveyance was signed on April 1, 2008, and was for a term of three years, and the Davis well was not completed until April 30, 2011, Plaintiff first attempted to convince Principle and Classic to release the royalty deed. When the companies refused, he filed a petition against them in DeSoto Parish entitled "Petition to Annul and Cancel Royalty Conveyances and Recover Royalty Payments and Ancillary Relief." He alleged the above facts, but also claimed that the Brown well was never completed, as shown by a Department of Conservation Inspection Report dated April 15, 2011, and that XTO never filed a "Well Completion Report" with the Conservation Department concerning the Brown well.
Plaintiff also alleged that no DT-1 test was performed on the Brown well, in accordance with Statewide Order 29-B, and that the well has never produced any gas. He further alleged that when Chesapeake applied to the Louisiana Commissioner of Conservation, it created the HA RA SU58 unit for the Haynesville Shale Zone by order effective May 12, 2009. In that order, the Commissioner found that the unit could "be efficiently and economically drained by one well" and designated the Brown well as the unit well and XTO as the operator of the well.
Plaintiff also alleged that Chesapeake applied for an amended drilling permit and received permission to drill the Davis well, which was completed on April 30, 2011. Because this date fell outside of the three-year term for the royalty conveyance, he sought a finding that prescription had accrued. He stated he had made demand on Principle and Classic to release the royalty conveyance, and both had refused. He claimed he was entitled to a release of the royalty conveyance, attorney fees incurred in the prosecution of the action and an accounting from Principle and Classic with respect to all payments received by each of them under their respective royalty conveyances.
In September 2012, Plaintiff amended his petition and changed the caption to "Petition to Annul and Cancel Royalty Conveyances and Recover Royalty Payments and For Relief from Operator's Breach of its Duty to Produce and Market Gas." He added XTO as a defendant and included three more paragraphs alleging that if the court found the Brown well was capable of producing gas in paying quantities, then XTO, as operator, had breached its duties by failing to diligently produce and market the gas. For this, he alleged he is entitled to damages. The petition against XTO was amended a second time. Although XTO filed several objections to the suit, its objections were overruled, and XTO is not a party to this appeal.
In October 2012, Principle filed a motion for summary judgment and sought dismissal of Plaintiff's suit, claiming prescription was interrupted and began anew by operation of law, specifically pursuant to La. R.S. 31:91 and by the compulsory unitization of lands, including lands covered by the Gilmer conveyance, which contained a shut-in well capable of producing *1142 in paying quantities. Apparently, no action was taken for years on this motion for summary judgment.
Prior to a decision on the motion for summary judgment, Plaintiff amended his petition a second time and indicated that on July 13, 2007 (prior to the royalty conveyance), he had signed an oil, gas and mineral lease in favor of Chesapeake covering the lands to which the royalty conveyance applied. Other than that change, he simply reiterated his demands from the first amended petition.
Principle's motion for summary judgment was reurged, and Plaintiff filed his cross-motion for summary judgment on August 3, 2015. Classic filed its motion for summary judgment on June 6, 2017, although it is not individually noted in the record. Instead, there is a document entitled "Motion to Cause Classic Production Services, Inc.'s Motion for Summary Judgment to be Filed under Seal," dated June 20, 2017. On August 14, 2017, a hearing was held on these motions for summary judgment, and the trial court took the matter under advisement. On November 16, 2017, it rendered judgment in accordance with its written reasons dated September 15, 2017, denying Plaintiff's cross-motion for summary judgment, granting Classic's and Principle's motions for summary judgment and dismissing all of Plaintiff's claims against them with prejudice.
In its reasons for judgment, the trial court stated that the issue raised in all three motions for summary judgment was whether the mineral royalty interest had prescribed due to nonuse. The underlying question it addressed was whether the Mineral Code required a specific surface production test to prove capability to produce minerals in paying quantities. After examining the Mineral Code and the jurisprudence, it found that it was undisputed that the Brown well had never been placed in production. Further, the minerals produced from the open-flow surface production test were not saved. Thus, prescription could not have been interrupted under La. R.S. 31:87 or 88.
However, the trial court found that the law provided an alternative method of interrupting prescription. That method required that there be a shut-in well, located on either land burdened by a mineral royalty or land included in a conventional or compulsory unit, that had been proved through surface production testing to be capable of producing minerals in paying quantities. The well had to have been tested and shut in prior to the creation of the unit. It noted that the law does not require any specific surface test to prove capability to produce minerals in paying quantities. La. R.S. 31:90 and 91.
The trial court found that the six tracts included in the April 1, 2008 instrument were included in a compulsory unit and that the Brown well was classified as a shut-in well. It also noted that Plaintiff's counsel had conceded that had the results of the January 28-29, 2009, open-flow surface production test been obtained through a DT-1 test, those results would show capability to produce minerals in paying quantities; thus, it found that all three requirements to interrupt prescription under La. R.S. 31:91 had been met.
Accordingly, the trial court found that prescription of nonuse was interrupted under La. R.S. 31:91 on May 12, 2009, when the Louisiana Commissioner of Conservation issued the order which created the HA RA SU58 unit and designated the Brown well as the unit well. Prescription began to run anew on that date. It also found that prescription of nonuse was interrupted under La. R.S. 31:87 on April 30, 2011, when the Davis well began production of minerals and that it continues to be interrupted by the continuous production *1143 of minerals by the Davis well and that no specific surface test is required to prove capability to produce minerals in paying quantities.
Plaintiff filed this appeal seeking review of the judgment granting Defendants Classic and Principle's motions for summary judgment and denying his cross-motion.
DISCUSSION
Plaintiff admits that the royalty conveyance deed expressly established a prescriptive period of three years, rather than the ten years ordinarily provided by Louisiana law, and that a shut-in well would perpetuate the term of the deed. However, he argues that the prescription of nonuse began to run on the date the royalty interest was created, April 1, 2008, and accrued on April 1, 2011, unless interrupted. He asserts that the burden of proving an interruption of prescription is on the mineral royalty owners, i.e., Principle and Classic, and that they have been unable to meet that burden.
Plaintiff argues that the Brown well did not interrupt the accrual of prescription on the royalty conveyance deed because it never produced any oil, gas or other hydrocarbons which were saved, used and/or sold; it was never connected to a pipeline; and it never had a deliverability test performed as required by the Louisiana Mineral Code before prescription on a royalty can be interrupted. He states that Defendants also rely upon production from the Davis well, which was not completed until April 30, 2011, and placed in production on May 1, 2011. He claims this reliance is misplaced because the Davis well did not begin producing until after the three-year term of the royalty conveyance had expired.
Plaintiff contends that the "open-flow surface production test," which was conducted on the Brown well on January 28-29, 2009, by FESCO, Inc., did not comply with the regulations issued by the Department of Conservation and was not conducted as required by the U.S. Bureau of Mines. He asserts that instead of being saved, used or sold, the gas was flared into the atmosphere. He argues that Defendants failed to show by proper test that the Brown well was capable of producing gas in paying quantities as required by La. R.S. 31:90 and 91 and that the well has not been shown to be properly viewed, classified or treated as a "shut-in" well as that term is used in those code articles.
Based on these arguments, Plaintiff contends that prescription was never interrupted during the three-year period between the signing of the conveyance deed and the anniversary of the third year on April 1, 2011. Further, he argues that the trial court erred in denying him reasonable attorney fees incurred by him in the prosecution of this proceeding in accordance with La. R.S. 31:207.
Defendants both argue that the trial court correctly granted their motions for summary judgment because the royalty conveyance specifically stated that a shut-in well, capable of production, would operate to interrupt prescription, and the Brown well fits that description. They contend that there is no law which requires a specific test, i.e., the DT-1 test, be performed to show that a well is capable of producing in paying quantities.
The Brown well was shut in and the field was unitized by the Department of Conservation in 2009. Defendants argue that it was shown by testing of surface production to be capable of producing minerals in paying quantities; and, therefore, prescription was interrupted when the HA RA SU58 unit was declared. They assert that the shutting in of the Brown well, which was capable of producing in paying *1144 quantities prior to the creation of a unit, interrupted prescription upon unitization of a mineral royalty on lands within the unit. As a result of the shut-in well and the unitization, prescription was interrupted and began anew.
Defendants further argue that when Chesapeake was given permission by the Louisiana Commissioner of Conservation to drill the Davis well as an alternative well, and it was completed and producing prior to the expiration of the three-year period beginning in 2009, that well, and its production, also operated to interrupt prescription. For these reasons, Defendants claim the trial court correctly granted their motions for summary judgment and denied Plaintiff's motion. The trial court did not award Plaintiff attorney fees; therefore, Defendants did not address the issue in their briefs.
An appellate court will apply the de novo standard of review when reviewing a summary judgment and will use the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Goins v. Wal-Mart Stores, Inc. , 01-1136 (La. 11/28/01), 800 So.2d 783. La. C.C.P. art. 966(A)(3) states that after an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. No genuine issues of material fact exist in this case. The parties only dispute the legal interpretation of the provisions of the royalty deed and whether prescription was interrupted by a well that was deemed to be capable of producing gas and then was shut in, awaiting a pipeline, by the Louisiana Department of Conservation.
The following provisions of the Louisiana Mineral Code are applicable to the issues presented in this case.
Prescription of nonuse of a mineral royalty commences from the date on which it is created. La. R.S. 31:86.
Prescription of nonuse running against a mineral royalty is interrupted by the production of any mineral covered by the act creating the royalty. Prescription is interrupted on the date on which actual production begins and commences anew from the date of cessation of actual production. La. R.S. 31:87.
To interrupt prescription it is not necessary that minerals be produced in paying quantities but only that they actually be produced and saved. La. R.S. 31:88.
When there exists on a tract of land burdened by a mineral royalty, or on a conventional or compulsory unit that includes all or part thereof, a shut-in well proved through testing by surface production to be capable of producing minerals in paying quantities, prescription is interrupted on the date production is obtained by such testing. If only a part of the tract burdened by the royalty is included in a unit and the unit well is on land other than that burdened by the royalty, the interruption of prescription extends only to that portion of the tract burdened by the royalty included in the unit. Prescription commences anew from the date on which the well is shut in after such testing. La. R.S. 31:90.
If the land or part thereof, burdened by a mineral royalty is included in a conventional or compulsory unit on which there is a well shut in prior to the creation of the unit, located on other land within the unit, and capable of producing in paying quantities as required by Article 90, prescription is interrupted on and commences anew from the effective *1145 date of the order or act creating the unit. La. R.S. 31:91.
In Delatte v. Woods , 232 La. 341, 94 So.2d 281 (1957), the court stated that the completion and the existence of a shut-in gas well on a validly created unit are equivalent to production on all tracts in order to interrupt the prescription accruing against a royalty interest and to preserve the same from extinction by prescription. Citing Union Oil Co. of Cal. v. Touchet , 229 La. 316, 86 So.2d 50 (1956) ; Le Blanc v. Haynesville Mercantile Co. , 230 La. 299, 88 So.2d 377 (1956).
In Webb v. Hardage Corp ., 471 So.2d 889 (La. App. 2 Cir. 1985), the court stated that, ordinarily, proof sufficient to carry the burden of showing production in paying quantities is a finding of commercial productivity resulting from the performing of the initial potential test required by the Department of Conservation. Citing Lee v. Goodwin , 174 So.2d 651 (La. App. 2 Cir. 1965), writ ref'd , 248 La. 149, 177 So.2d 118 (1965). The test is a necessary prerequisite to classification of the well as a gas or an oil well and to the obtaining of an allowable and the authority to sell oil or gas from the well. The court also noted that while other kinds of evidence of production potential could also be considered, such as the results of logs and cores, the flaring of the wells for periods of time and the history of the wells in the same zone in the field, the importance of actual testing of surface production is obvious and is the most direct indication of production capability. The court stated that La. R.S. 31:34 and 90, which address the testing of shut-in wells in the context of interrupting prescription on mineral servitudes and mineral royalties, respectively, both provide for interruption of prescription by shut-in wells proved through testing by surface production to be capable of producing minerals in paying quantities.
In the case sub judice , the evidence showed that the royalty deed was executed on April 1, 2008, and was to have a prescriptive period of three years, rather than the ten years ordinarily provided under Louisiana law, and it specifically stated that a "shut in well shall perpetuate the term of this Deed." Therefore, barring an interruption of prescription, the royalty would have prescribed on April 1, 2011.
It is uncontroverted that although the Brown well was completed on January 23, 2009, and was tested by FESCO, Inc., on January 28-29, 2009, via an open-flow surface production test, which showed the well was capable of producing 1,156 MCF per day, the well was shut in and never placed in production due to lack of a pipeline. For these reasons, it is clear that under La. R.S. 31:87 and 88, prescription was not interrupted by production and saving of the production.
The deed, however, conveying the royalty interest stated that a shut-in well would operate to "perpetuate the Deed." After the surface production test was completed in January 2009, the Brown well was classified as a shut-in well. On May 12, 2009, the Louisiana Commissioner of Conservation issued Order No. 191-H-45, which created the HA RA SU58 unit and designated the Brown well as the unit well.
As a result of the issuance of Order No. 191-H-45 and pursuant to La. R.S. 31:91, the land at issue, which was burdened by a mineral royalty, was included in a compulsory unit on which there was a well shut in prior to the creation of the unit, located on other land within the unit and capable of producing in paying quantities as required by La. R.S. 31:90. Therefore, prescription was interrupted on, and commenced anew, from the effective date of the order or act creating the unit.
*1146 It should also be noted that when the Davis well began production of minerals on April 30, 2011, within the three-year period that commenced on May 12, 2009, the production interrupted prescription of nonuse under La. R.S. 31:87. Prescription continues to be interrupted by the continuous production of minerals by the Davis well. Accordingly, the judgment of the trial court is affirmed.
Further, we note that attorney fees are only due if the former owner's mineral right is extinguished or expired and the former owner is forced to file suit to have the extinguishment recognized. The comments to La. R.S. 31:206 state, "In the case of interests other than mineral leases, the party demanding the cancellation is not entitled to damages or attorney's fees if there is a good faith dispute concerning whether the interest in question has expired." Perkins v. Long-Bell Petroleum Co ., 227 La. 1044, 81 So.2d 389 (1955). For these reasons, Plaintiff is not entitled to attorney fees.
CONCLUSION
For the foregoing reasons, the judgment of the trial court granting the motions for summary judgment filed by Defendants Principle Energy, L.L.C., f/k/a Regal Energy, L.L.C., and Classic Production Services, Inc., and denying the motion for summary judgment filed by Plaintiff George M. Gilmer, Jr., is affirmed. Costs of this appeal are assessed to Plaintiff George M. Gilmer, Jr.
AFFIRMED.