**69 So.2d 745**

**ARKANSAS FUEL OIL CO.**
**v.**
**SANDERS et al.**

**No. 41116.**

Dec. 14, 1953.

Rehearing Denied Jan. 11, 1954.

Smith, Risinger & Shuey, Shreveport, for defendant-appellant.

Meadors, Shaw & Meadors, Homer, W. M. Phillips, W. S. Waller, M. M. Morelock, Johnson & Morelock, Shreveport, for defendants-appellees.

PONDER, Justice.

This is an appeal from a dispute in a concursus proceeding between a land-owner and mineral owners over who was entitled to the proceeds derived from the production of minerals. The land-owner, W. R. Sanders, is appealing from the judgment of the lower court decreeing the mineral owners entitled to the fund.

On December 9, 1924, R. P. Bond conveyed to his five children, viz.: J. N. Bond, J. L. Bond, Mrs. Bertha Kirkpatrick, R. E. Bond and Mrs. Lucy R. Sanders, 320 acres of land located in Claiborne Parish with the following reservation:

"It is understood and agreed and is taken as part of the consideration herein that this vendor reserves to himself the right to one-half (½) of the proceeds from the sale of oil or minerals under said described land should another stratum of oil be found in paying quantities in, on, or under said described land, all of said proceeds to come from the additional stratum and not from the one already discovered."

At the time that this conveyance was made the land was under a mineral lease previously executed by R. P. Bond, the vendor, and three-fourths of the minerals were outstanding in the name of other parties who had acquired same from this vendor.

At and prior to this conveyance oil was being produced from the land from the shallow Buckrange Sand and there was no production at that time from any other sand or horizon.

On May 8, 1928 the five children of R. P. Bond partitioned the surface of the 320 acres of land but retained their mineral interest in indivision. On January 27, 1930, J. N. Bond conveyed the East ten acres of the NE¼ of the SW¼ of Section 21, which he had acquired from the partition to W. R. Sanders which deed was amended and corrected on February 5, 1930 so as to contain the following reservation, viz.:

"It is specially understood by and between the vendor and vendee herein that all the oil, gas, and other minerals, in, on, and under, and that may be produced is hereby reserved and excepted from this conveyance, together with the rights of ingress and egress for the development thereof."

On May 14, 1929, R. E. Bond conveyed to W. R. Sanders the West thirty acres of the NE¼ of the SW¼ and the SE¼ of the SW¼ of Section 21 which he had received in the partition with the following reservation, viz.:

"Vendor receives and excepts from this conveyance all the minerals in, on, and under, and that may be produced from the above-described land now belonging to this vendor and as acquired by him in his deed to the property from his vendor."

There was no production from any portion of the 320 acre tract of land between December 9, 1924 and December 10, 1934 other than that produced from the Buckrange Sand. In 1942 a deep producing sand was discovered, known as the Pettit Sand, which has been producing since that time. In 1948 a deeper sand was discovered, known as the Samckover Lime Sand, which is presently producing. The funds in dispute in this case are derived entirely from the production from sands and horizons other than the shallow Buckrange Sand.

All of the parties to this suit concede that the royalty reserved by R. P. Bond when he transferred the 320 acres of land to his five children on December 9, 1924 has prescribed because of non-production within the ten-year period of time.

W. R. Sanders contends that the royalty right reserved by R. P. Bond on December 9, 1924 reverted to him, the land-owner, insofar as it affected his eighty acres of land. The opposing claimants, appellees, the children of R. P. Bond and their respective heirs and assigns, take the position that the royalty right reverted to them as the owners of the one-fourth mineral rights in the land.

When the royalty right prescribed it passed out of the picture. There was nothing to revert to anyone. The parties are in the same position as though no royalty right had ever existed. It was merely a conditional obligation depending on an uncertain event which prescribed in ten years because the event did not occur. Vincent v. Bullock, 192 La. 1, 187 So. 35; St. Martin Land Co. v. Pinckney, 212 La. 605, 33 So.2d 169; Continental Oil Co. v. Landry, 215 La. 518, 41 So.2d 73; Union Sulphur Co. v. Lognion, 212 La. 632, 33 So.2d 178; Humble Oil & Refining Co. v. Guillory, 212 La. 646, 33 So.2d 182; Union Sulphur Co., Inc. v. Andrau, 217 La. 662, 47 So.2d 38.

For the reasons assigned, the judgment is affirmed at appellant's cost.

HAMITER, J., concurs in the decree.