MOISE, Justice.
Plaintiff, the owner of two oil, gas, and mineral leases insofar as they affect the North Half (NY) of Section 33, Township 10 South, Range 4 West, of lands situated in Jefferson Davis Parish, instituted this concursus proceeding, praying that the court pass upon conflicting claims as to the ownership of a %4th royalty interest on the oil and gas produced from a well on the property, completed by it on or about January 11, 1955. It deposited $5,532.51 in the registry of the court, alleging that this represented the value of the 4th royalty interest in dispute among the named defendants from the date of first production until April 20, 1955.
The facts of record show that on January 19, 1943, Niblett Farms, Inc., the then owner of the land upon which the well herein involved was later drilled, conveyed a Jkth mineral royalty interest to five named parties. On May 11, 1948, the land itself was sold by Niblett Farms, Inc. to Wallace J. Broussard, and the sale included the following provisions:
“(a) There is excepted from this conveyance oil, gas and other mineral royalties and royalty rights heretofore reserved and sold to others and hereby especially reserved to the vendor in the total of %2nds of all of the oil, gas and other minerals produced or to be produced and saved from the land; pro *665 vided, however, that the foregoing %2nds royalty interest includes as a part thereof a royalty interest of %rth of the oil and gas on and under said land and to be produced therefrom, being the same Jkth interest heretofore sold to Mrs. Sarah L. Martin, David C. Ritchie, Mrs. Gladys C. Burchenal, Charles A. McCoy and Mrs. Gertie Halloway, by deed dated January 19, 1943, and recorded * * the rights of Grantor under this additional reservation being subject to the prior sale so made, but including all reversionary rights of Grantor as the present owner of said land, it being the intention that if and when the %4th royalty rights so sold should terminate, the reversion thereof shall be for the benefit of Grantor herein whose rights to such additional amount of royalties shall immediately become effective.
“(b) Vendor herein reserves for itself and its successors and assigns a mineral right interest in the said land, together with all necessary rights of ingress and egress thereon, equal to one-half i}/¿) of the oil, gas and other minerals therein and thereunder, but subject to the limitations and conditions hereinafter stipulated.
“(c) Two-thirds (%) of the amount of outstanding royalties hereinabove excepted from this conveyance, or a total of %2nds of all of the oil, gas and other minerals produced from said land shall be chargeable against and payable out of the mineral right interest herein reserved to any by vendor; the remaining %2nd royalty interest being chargeable to and deducted from the rights of the vendee in the land herein described.
“(d) No lease shall be granted unless 1 such lease provides for sufficient royalties payable out of the oil, gas and other minerals produced from the land to pay all royalties outstanding on the date of this deed and which are to be charged against the respective rights of the parties as set forth in paragraph (c) hereof, and so ■ as to pay vendee herein, or his successors and assigns, a minimum royalty of %2nd of all the oil, gas and other minerals produced and saved from the property. Should any lease to be negotiated in the future provide for total royalties in excess of the usual %th, then the amount of royalties in excess thereof shall then be divided between and belong to vendor and vendee, or their respective successors or assigns, in equal proportions.”
On September 22, 1948, Niblett Farms, Inc., sold to Harry E. Hawthorne all of the oil, gas, and other minerals and mineral rights affecting the land. Hawthorne, Inc., successor of Niblett Farms, Inc., then sold to Harry E.' Hawthorne all of the rever *667 sionary rights averred to be owned by it. Between the date of that sale and December 8, 1952, Harry E. Hawthorne, Harry R. Hawthorne, and Hugh A. Hawthorne sold, resold, and donated, among themselves, royalty interests and mineral rights affecting their averred interests.
By act dated December 8, 1952 (superseded by an act of January 16, 1953), Harry E. Hawthorne and Hawthorne, Inc., attempted to reactivate those portions of the Jkth royalty interest sold to David C. Ritchie and Mrs. Gladys R. Burchenal. Each of the parties owned a Vmth interest, the sum total being a Jknd interest. Mr. Ritchie and Mrs. Burchenal conveyed their interests to J. Woodrow Waggoner, who in turn conveyed J/j of his interest to Hugh A. Hawthorne. Only the Jfend interest was averred to be alive at the time of trial.
As hereinabove stated, a producing well was completed on this property in January, 1955. Wallace J. Broussard maintained that the 3/kth royalty interest conveyed on January 19, 1943,. prescribed on January 19, 1953, and that as owner of the land he became entitled to this Jkth of production of oil and gas. He contended that there could •be no reversionary royalty rights as set out in the act of sale to him. The Hawthorne interests and J. Woodrow Waggoner claimed that this Jkth royalty interest was vested in them.
The matter went to trial on the facts as presented above. The final opinion of the trial court, after rehearing, held that in Louisiana there could be no reversionary interests as set forth in Paragraph (a) of the contract of sale, supra, but, that the %2iid interest, supra, was interrupted by the act of reactivation. In his reasons for judgment, the trial judge concluded:
“Premises considered we find that except as to the one/seventy-second (Jfe) which Harry E. Hawthorne interrupted and which is charged against his mineral interest, the one-twenty-fourth 0k) royalty which is the subject of this dispute passed out of the picture. When the royalty passed out of the picture, since one/third (1/3} of the one/twenty-fourth 0k) royalty was apportioned as having been taken from Mr. Broussard’s one/half {1/2} minerals, Mr. Broussard is now entitled to one/third (1/3) of the outstanding one/twenty-fourth (Jk) which amounts to a royalty of one/seventy-second (V72). Harry E. Hawthorne is entitled to nine/sixteenths (%g) of two-thirds (%) of the one/twenty-fourth (Jk) royalty less the one/seventy-second (%2) which he interrupted; i. e. a royalty of one/five-seventy-sixths (%76). Hugh A. Hawthorne is entitled to five/sixteenths (%s) of two/thirds (%) of one/twenty-fourth 0k) plus the one/one-forty-fourth (%«,) which he purchased from Mr. Waggoner; i. e. a royalty of *669 nine/five-seventy-sixths (%76). Harry R. Hawthorne is entitled to two/sixteenths (%e) of two-thirds (¿4) of the one/twenty-fourth (%é) ; i. e. a royalty of one/two eighty-eighths (Jks). J. Woodrow Waggoner is entitled to a one/one-forty-fourth (Via).”
The above was reduced to judgment, from which all parties have appealed, except the Union Oil and Gas Corporation of Louisiana and J. Woodrow Waggoner.
It is the contention of Hawthorne, Inc., Harry E. Hawthorne, Harry R. Hawthorne and Hugh A. Hawthorne, joined in brief by J. Woodrow Waggoner, that the trial court erred in adjudging an undivided one-third (j/árd) interest in the royalty in dispute to Wallace J. Broussard. They argue that even if the language of the contract of sale mentioning reversionary rights must be disregarded, the language sufficiently sets forth that the Jkth royalty interest must inure to their benefit.
Wallace A. Broussard maintains that as owner of the land he is entitled to the bkth royalty interest.
The -deed of January 19, 1943, was the sale of a Jkth royalty interest; but, unless there was production upon the land involved, the interest expired in ten years, or, on January 19, 1953. In Continental Oil Co. v. Landry, 215 La. 518, 41 So.2d 73, 75, this Court ably stated:
“In Vincent et al. v. Bullock et al., 192 La. 1, 187 So. 35,, this court held that the reservation of a royalty right to the oil, gas, and other minerals in a tract of land imposes upon the property a real obligation and is a species of real right running with the land, subject to the prescription of 10 years liberandi causa.
“It is also well settled that this right is merely one to share in the production of oil, gas, and other minerals if and when they are produced from the property subject to the right. It is passive in its nature, and there is no obligation on the royalty owner to develop the property, nor does he have this right. All that he acquires is a right attached to the land, the right to receive his share of the minerals if and when they are produced. St. Martin Land Co., v. Pinckney et al., 212 La. 605, 33 So.2d 169; Union Sulphur Co., Inc., v. Lognion et al., 212 La. 632, 33 So.2d 178; Humble Oil & Refining Co. v. Guillory et al., 212 La. 646, 33- So.2d 182. His share of the minerals when they are produced is royalty. At the moment of the execution of the royalty sale, under our holding in Vincent et al. v. Bullock et al., supra, a species of real right is created, imposing a burden upon the land, which is subject to the prescription of 10 years liberandi causa."’ (Italics ours.)
*671 We again said, in the case of Arkansas Fuel Oil Co. v. Sanders, 224 La. 448, 69 So.2d 745, 746:
“When the royalty right prescribed it passed out of the picture. There was nothing to revert to anyone. The parties are in the same position as though no royalty right had ever existed. It was merely a conditional obligation depending on an uncertain event which prescribed in ten years because the event did not occur. * * * ”
The record discloses that no production was received from the land involved until plaintiff brought in a producing well in 1955. Therefore, the %áth royalty interest ’sold by Niblett Farms, Inc. in various denominations on January 19, 1943, prescribed on- January 19, 1953. What Niblett Farms, Inc., sold was merely the right to share in the production of oil, gas and other minerals if and when they were produced within ten years. The royalty owners entered into a conditional obligation, and when the condition did not occur, prescription liberandi causa became applicable to' this %ith royalty interest. LSA-C.C. 789.
The acts of reactivation of December 8, 1952 and January 16, 1953, were attempts by the Hawthorne interests to reactivate part of the %tth royalty interest. These deeds were not signed by the landowner, Wallace J. Broussard, and the record does not disclose any instrument signifying his intent to interrupt the running of prescription.. To have the running of prescription interrupted, there would have had to be an acknowledgment on the part of the landowner, and none exists. We, therefore, conclude that the deeds of reactivation could have no effect on the running of prescription on the sale of the %¿th royalty interest. Liberty Farms, Inc. v. Miller, 216 La. 1023, 45 So.2d 610.
In the deed of sale of the land to Wallace J. Broussard, supra, it is stated that the Jkth royalty interest shall revert to the grantor at its termination. The insertion of such a provision was an attempt, by those who did not at that time own the royalty interest, to take such interest out of commerce. Such action is definitely against the public policy of the State of Louisiana, and our ruling in the case of Hicks v. Clark, 225 La. 133, 72 So.2d 322, 325, condemning a reversionary interest in minerals, is applicable to a reversionary interest in royalty rights. We hold that the following statement from that decision is apposite to the present controversy:
“We consider the reservation of the reversionary interest in this case as an effort to circumvent the public policy of this state, and we therefore refuse to recognize or give effect to it. * * ”
There is no merit to the Hawthorne group’s contention that, even if we omitted *673 the reversionary language from the contract the Jkth royalty interest would now belong to them. It follows, that when the Vzith royalty interest prescribed in its entirety on January 19, 1953, any funds which might become attributable to such interest belong to the landowner. The reason for this is found in the very language of the contract, supra, between Niblett Farms, Inc. and Wallace J. Broussard which reads:
“ * * * provided, however, that the foregoing %2nds royalty interest includes as a part thereof a royalty interest of %4th of the oil and gas on and under said land and to be produced therefrom, * * * (Italics ours.)
A reading of the act of sale from Niblett Farms, Inc., to Wallace J. Broussard convinces us that it was the clear intent of the parties to retain to the vendor Vá of the minerals but %2nds of the royalties. It is, likewise, clear that the vendor intended that the %4th royalty interest, which is the basis of this suit, form a part of the %2nds royalty interest reserved. Therefore, when the %4th royalty interest prescribed, it had to be subtracted from the %2nds royalty interest. This would leave a royalty interest of %6ths to the vendor and %eths to the landowner.
In his answer to plaintiff’s petition, Wallace J. Broussard prayed for attorney’s fees. Since this demand was neither briefed nor urged in this Court, we presume that it has been abandoned.
Amicus Curiae has filed a brief on behalf of Charlie M. Watkins and Claude C. Watkins in support of the position of Wallace J. Broussard, and we have drawn the following chronological list of conclusions similar to those presented by him:
(a) The public policy of the State of Louisiana is against any reservation of reversionary rights in mineral servitudes, and this policy applies fully to any such attempt to deal with mineral royalty rights. Therefore, the efforts by Niblett Farms, Inc., to reserve the reversionary rights in the outstanding royalty created by it as landowner, and which reservation was sought to be made by Niblett Farms, Inc., as owner of the land, is in law a violation of the public policy of this State; particularly is this true when there is an attempt to prolong, by contract or conventional arrangements, the normal life of a mineral servitude, and it is only by the happening of the event of production that such will be permitted.
(b) At the expiration of the %4th royalty interest by the running of the liberative prescription, the benefit of that prescription accrued to the landowner, Wallace J. Broussard, who was not only the landowner but also the owner of ^ of the minerals.
For the reasons assigned, the judgment of the trial court is reversed and set aside.
It is now ordered that the landowner, Wallace J. Broussard, be and he is hereby declared to be the owner of the VziÜi roy *675 alty interest herein involved; it is further ordered that the Clerk of Court turn over to him the $5,532.51 deposited in the regis-try of the court, which amount- represents the value of said interest.
It is further ordered that Union Oil and Gas Corporation of Louisiana, holder of mineral leases on the lands involved here-r in, subject to the mineral royalty interests involved in this concursus, be and it is hereby relieved of all liability for the payment of the money deposited in this concursus and for all costs of these proceedings.
All costs are to be assessed in accordance with the provisions of Act 123 of 1922, as amended, LSA-R.S. 13 :4816.
HAMITER, J., concurs in the decree.
HAWTHORNE, J., is of the opinion a rehearing should be granted.