HAMITER, Justice
(concurring in part and dissenting in part).
In my opinion the proceeds deposited in the registry of the court in this concursus proceeding (representing one-third of the one-eighth royalty which the lessee was obligated to pay under the terms of its lease), should be paid in the proportions of one-half to Wallace J. Broussard and one-half to the Hawthorne group (Harry E. Hawthorne, Hugh A. Hawthorne and J. Woodrow Waggoner).
Except as to the reactivated royalty interests (those held by Hugh A. Hawthorne and J. Woodrow Waggoner and which affect only the mineral rights of Harry A. Hawthorne because he reactivated them without the approval of Broussard), the disputed one-twenty-fourth mineral royalty, admittedly, prescribed on January 19, 1953 as the result of nonproduction for ten years. On that date, in other words, it was extinguished; it ceased to exist; it was without any effect whatsoever. To use the language contained in Arkansas Fuel Oil Company v. Sanders, 224 La. 448, *697 69 So.2d 745, at that time it passed out of the picture; there was nothing to revert to anyone; the parties were in the same position as though no royalty right had ever existed. Consequently, then the respective one-half mineral rights of Wallace J. Broussard and Harry A. Hawthorne (except insofar as the reactivated interests are concerned) were free of the previously encumbering one-twenty-fourth royalty and each of those persons became entitled to receive payment for any subsequent oil and gas production on the basis of his full mentioned mineral ownership.
True, the deed from Niblett Farms, Inc., to Broussard contained the recital that the disputed one-twenty-fourth royalty was to be paid out of two-thirds of Hawthorne’s minerals and one-third of Broussard’s minerals. But that recital contemplated the obtaining of production while such royalty was in existence. Hence, when the royalty “passed out of the picture” (because of failure of production during the ten year period) before any oil or gas was produced the mentioned obligations of Broussard and Hawthorne to pay in the stated proportions became ineffective. To conclude otherwise, I think, is to adopt the principle that contracts respecting reversionary rights are valid — a principle that we, on several occasions in our jurisprudence, have emphatically denounced as being contrary to public policy.
On Rehearing