CULPEPPER, Judge.
The plaintiff, Charles L. Lavergne, filed this suit to be declared the owner of a certain mineral royalty interest. The defendant, Ashton Savoie, is the adverse claimant of the royalty in question. From a judgment declaring Lavergne to be the owner, Savoie has appealed.
The sole issue on appeal is the legal question of whether liberative prescription of a mineral royalty interest is interrupted or merely suspended by production.
The facts stipulated by agreement of the parties show that on February 18, 1947, Charles L. Lavergne sold to Ashton Savoie 40 acres of land and the seller reserved a %2nd of %ths mineral royalty interest.
On July 1, 1947, Savoie executed a mineral lease of the land. Pursuant to the provisions of the lease, it was pooled with other leases and production was obtained from this unit as of August 29, 1949. This production continued until May 31, 1951, when it terminated and the lease was released.
On May 22, 1955, Savoie executed another mineral lease on the land. On October 111, 1959, the Department of Conservation created a unit which included the land in question, as of which date production commenced and, for purposes of this suit, still continues.
It is plaintiff’s contention that the liber-ative prescription of this mineral royalty *72 interest, which was created on February 18, 1947, was interrupted by the production from August 29, 1949 until May 31, 1951, thereby continuing the royalty interest for an additional 10 years after May 31, 1951. Under this rationale, the mineral royalty interest was still in effect when production commenced under the new unit on October 19, 1959.
Defendant contends, on the other hand, that the initial period of production from August 29, 1949 to May 31, 1951, did not interrupt liberative prescription but instead merely suspended it. Under this rationale, the nonproductive periods between the date the royalty interest was created, February 18, 1947, and the date the last production commenced, October 19, 1959, totals 10 years, 10 months and 30 days, and the mineral royalty interest in question is extinguished by liberative prescription of 10 years.
We find there are many cases in our jurisprudence which state that production “interrupts” the running of prescription as to mineral royalty interests.
In Crown Central Petroleum Corporation v. Barousse, 238 La. 1013, 117 So.2d 575 (1960), there was a mineral royalty interest on a 150-acre tract of land. 24 acres of this tract were subsequently included in a unit from which production was obtained on another tract. The principal issue was whether the production interrupted prescription as to the portion of the tract not included in the unit. However, in its opinion the court made this statement:
“Since, as above stated, production from the Harmon-A~Unit must be considered as production from at least a part of the Barousse tract, it follows that prescription was interrupted as to the entirety of any royalty interest which burdened that part of the Barousse tract included in the unit. This is because production from any part of a tract subject to royalty interests ordinarily interrupts the running of prescription as to the entirety of those interests.”
In Montie v. Sabine Royalty Company, 161 So.2d 118 (La.App., 3rd Cir. 1964, writ of certiorari refused) this court held that production from a pooled unit interrupted prescription of mineral royalty rights on an entire 368-acre tract, even though only approximately 9 acres of the tract were in the unit and the producing well was not located on the tract. We cited Crown Central Petroleum Corporation v. Barousse, supra, as controlling and stated: “The drilling within the unit interrupted prescription on the entire 368-acre tract in question even though the drilling did not take place on any part of the 368-acre tract.” (Emphasis supplied)
In Whitehall Oil Company v. Heard, 197 So.2d 672 (La.App., 3rd Cir. 1967, writ of certiorari refused) co-heirs partitioned a large tract and reserved separate mineral royalty interests in each of the lots. We held that production from one of the lots did not interrupt prescription of the royalty as to the other lots. In discussing the applicable law we stated:
“As these authorities show, the royalty right is a charge on the right to remove minerals from the land, which ‘mineral right’ (if held by other than the land’s owner) is classified as a servitude, yet another species of real right attaching to the land affected. Therefore, a royalty right is subject to the same limitations in creation and is extinguished by the same prescriptive causes as would extinguish a mineral right to which it was an appendage. Union Oil & Gas Corp. v. Broussard, cited above, at [237 La. 660], 112 So.2d 113-114; Continental Oil Co. v. Landry, 215 La. 518, 41 So.2d 73; see also Frey v. Miller, La.App. 3 Cir., 165 So.2d 43, 48-49, certiorari denied.”
In view of these authorities, it is our opinion the trial judge correctly concluded that liberative prescription of the mineral royalty interest in question here was interrupted by production and hence the royalty is still in existence and is owned by the plaintiff.
*73 Pursuant to Rule XIII of the Uniform Rules of the Courts of Appeal, Joseph D. Lavergne, as administrator of the estate of the deceased plaintiff, Charles L. Lav-ergne, has been substituted as the proper party plaintiff in these proceedings.
For the reasons assigned, the judgment appealed is amended to substitute Joseph D. Lavergne, administrator of the estate of the deceased, Charles L. Lavergne, as the party plaintiff appellee. In all other respects the judgment is affirmed. All costs of this appeal are assessed against the defendant appellant.
Affirmed, as amended.