MOISE, Justice.
R. C. Grayson, alleging himself to be the owner of Lot 12 of Fractional Section 14, Township 11 North, Range 16 West, less and except that portion of the same lying and being situated North and West of Grand Cane Bayou, and Lot 2 of Fractional Section 23, Township 11 North, Range 16 West, sought injunctive relief and damages in the sum of $5,000 for an alleged trespass to his property by the construction of a roadway. In the alternative, he prayed that defendants he enjoined from allegedly trespassing on Section 14. In the further alternative, plaintiff prayed that if defendants are entitled to a right of way over all or part of his property, such right of way be taken where it is least burdensome to the servient estate.
The trial court overruled exceptions to the jurisdiction ratione personae and no right and no cause of action. On trial of *465 the merits, plaintiff was awarded damages in the sum of $875.
The defendant has appealed, asking that plaintiff’s demands be rejected, and the plaintiff has answered the appeal, praying that the damages awarded be increased by the sum of $3,000. The matter was transferred to this Court from the Court of Appeal, because of its lack of jurisdiction. 66 So.2d 396.
The facts disclose that plaintiff, R. C. Grayson, on November 9, 1936, purchased from C. T. Lawrence Lot 2 of Fractional Section 23 and Lot 12 of Section 14, all in Township 11 North of Range 16 West, with all buildings and improvements thereon, less and except that portion of Lot 12 of Section 14, Township 11 North, Range 16 West, lying North and West of Grand Cane Bayou, containing seventy-five acres, more or less, for a price of $2,350. At that time one-half of the minerals on the property had been sold to A. R. McElreath and F. W. Suggett. Shortly after his purchase plaintiff farmed the land for a few months and enclosed it with a fence. Between 1942 and 1945 the land was completely overflowed by flood from the Sabine River. As a result of the flood all improvements were destroyed, and the land has never been used again for farming. The surface of the land is now covered by a sandy deposit.
On October 3, 1936 McElreath and Suggett transferred their one-half mineral interest to Amerada Petroleum Corporation, and on February 18, 1941 a lease was given by Amerada Petroleum Corporation to Southern Production Company. The evidence shows that a well was drilled in November 1950, adjoining the abovementioned Section 23. On February 27, 1951 the Conservation Department appointed defendants, Lyons, Prentiss & McCord, operators of the well, and unitized that part of Section 23 which plaintiff owns in the pooling unit. Plaintiff has never given a lease on any part of his land, but the evidence discloses that he receives between $50 and $65 per month from the well which has been drilled.
At the time of plaintiff’s purchase there was an old dirt road traversing all of plaintiff’s property and leading to the bayou.
During the fall of 1950 defendants saw fit to construct a new road over plaintiff’s property, in order that there might be a means of ingress and egress to the well. Plaintiff was not consulted, and it was only after the road had been entirely finished that he knew of its construction. The road was built by Ross and Neal, dirt contractors, and supervised by John F. Lockwood, an employee of defendants. Mr. Lockwood’s testimony is to the effect that part of the old road was followed and then there was a delineation. He states that there was no other practical route. His testimony is as follows:
“We had to have ingress and egress to the location at all times and going *467 the other route would have crossed very deep branches and low places that would have been flooded in high water.
“Well, we did the usual thing we do in building a road, got the maintainers and bull dozer in there and graded the road down as far as possible and in the bottom we laid a board road, which I believe was on Mr. Austin’s property, to the location and we also did some work on the public road up there in a low spot, put in a culvert, and boarded part of the road across Mr. Gray-son's property.”
The road is approximately one-half mile long, thirty-six feet wide, with side ditches of twelve inches.
Plaintiff alleges that as a result of building the road he suffered the following damages:
(a) His fences, at each end, were torn down and not replaced;
(b) There are now ditches on his • property, as a result of the excavation .oLdirt from his property;
(c) He has suffered a deliberate trespass;
(d) The farming value of his property has been diminished by the cutting of his property in half, and cultivation will be more difficult;
(e) Dirt has been removed from his property to fill other property;
(f)Because of the ditches, his property is subject to overflow and reduction in the value of soil.
In the case of Continental Oil Company v. Landry, 215 La. 518, 41 So.2d 73, 75, we find the following statement:
“The owner of the mineral right has the right of ingress to, and egress from, the land, the right to produce the minerals, the right to ' participate in the bonuses and delay rentals paid under the terms of any lease. * * * ” See Wier v. Glassell, 216 La. 828, 44 So.2d 882.
We cannot understand why defendants did not consult with plaintiff with respect to building the road, but a close study of the evidence shows that the construction of the road was necessary to provide an outlet to the public road and a means of ingress and egress to the producing well.
Plaintiff is sharing in the fruits of the well, and he purchased the land subject to a servitude — one-half of the mineral rights having been sold. By purchasing the land with one-half of the minerals previously sold, we feel that plaintiff consented to the servitude.
In the syllabus of the case of Patout v. Lewis, 51 La.Ann. 210, 25 So. 134, we find the pertinent statement:
“A person consenting to a servitude upon his land thereby consents to a *469 right of access to and from, and a right of passage to and from, the land subjected to the servitude, in order to give effect to the servitude to the extent and in the manner known to and contemplated by the parties. He to whom a conventional servitude is due has the right to make all the works necessary to use and preserve the same. He has the right to place a gate in the boundary fence, if one be necessary to reach the grounds, and insist that it be not removed and access to the lands barred.”
Even though the sale by Lawrence to Suggett and McElreath did not mention the right of exploration, this Court has held:
“ * * * the sale of an interest in minerals or mineral rights by a landowner necessarily carries with it the right to explore, * * Standard Oil Co. of Louisiana v. Futral, 204 La. 215, 15 So.2d 65, 70. See also, Union Sulphur Co., Inc., v. Andrau, 217 La. 662, 47 So.2d 38.
We, therefore, conclude that defendants had a right of passage over plaintiff’s land and were within their rights in constructing the road. We have studied the evidence to determine if in exercising this right plaintiff was damaged in an unnecessary manner.
Plaintiff did not prove that his fence had been knocked down by the workmen constructing the road. There is evidence to the effect that the property had been previously flooded and that the old road had been used by others. Plaintiff did not examine his fence immediately after the construction of the road, and we cannot say that defendants tore it down. It is purely a matter of conjecture.
The record conclusively shows that plaintiff has not farmed the land for a number of years. Plaintiff testified that he did not intend to sell his land. The proof is insufficient to conclude as to the farming value of the land as it now stands.
The trial court has not favored us with written reasons for judgment, but we believe that its finding that ditches had been dug and that it was necessary to level the roadway is correct.
The testimony of Mr. J. E. Tyler as to the amount necessary for repair must have been the basis of the Trial Judge’s conclusion in awarding $875 damages, and we cannot say from the evidence that such an award is manifestly erroneous.
For the reasons assigned the judgment of the trial court is affirmed, the costs to be paid by defendants.
PONDER, J., absent