JiNORRIS, Judge.
The plaintiffs, owners of a tract of land in Webster Parish, appeal a judgment that rejected their claims for injunctive relief and damages against Kelley Oil Co.[1] and its contract operator, Brammer Engineering Co. The District Court held that under an oil, gas and mineral lease granted by the plaintiffs in 1972 and later partially acquired by Kelley as lessee, Kelley had the right to improve and use a road that crossed the plaintiffs’ tract to drill and operate a well on adjacent property not owned by the plaintiffs. For the reasons expressed, we reverse and render judgment granting the plaintiffs the injunctive relief prayed for.

Factual background

The plaintiffs,' Mattie, Connell Caskey, Sue Connell and Virginia Connell Davis (hereinafter, “the Connells”), are three sisters. Ih 1972 the Connells, with their father and two brothers, granted a mineral lease (the “Con-nell lease”) to Mrs. Gladys Hurley, d/b/a Hurley Oil and Gas, affecting their 140-acre tract (the “Connell tract”) in Webster Parish.[2] The Connells later acquired their father’s and brothers’ interest in the tract.[3] Mrs. Hurley assigned part of her interest in the lease to Franks Petroleum, which drilled and operated a well on the tract for many years. Franks later conveyed its interest in the lease to Sonat Exploration, which still operates two wells on the Connell tract. The Connells testified that they never had any dispute with Franks or Sonat regarding their surface operations; these companies accessed wells by a locked gate, on the north boundary of the tract and an unimproved road which Mrs. Caskey referred to. as a “pig trail.”
laAccording to Mrs. Caskey, in 1989 or 1990 Kelley Oil began asking her for permission to enter the gate and use the unimproved road for access to wells it was operating on adjacent land (the Seamster tract) owned by someone else south of the Connell tract. . Thereafter Kelley’s personnel frequently passed through and left the gate unlocked.
In August 1996 someone tore down the gate, felled trees, improved ditches and laid a shale surface on the previously unimproved road. This was for access to another adjacent tract (the Crichton tract) south of the Connell tract, where Kelley was drilling a well. At trial, Kelley denied removing the gate, but admitted directing its operator, Brammer, to make substantial improvements to the road, drainage and right of way. The improved road now traverses the entirety of the Connell tract, running roughly north to south. Despite having an undivided working interest therein, it is undisputed that Kelley conducts no mineral operations on the Con-nell tract.
The Connells filed this petition in September 1996, seeking money damages and an injunction to stop Kelley and its contractors[4] from entering the Connell tract just for access to an adjoining tract. A TRO issued but was vacated for failure to post timely security. A hearing on the preliminary injunction was held in October 1996. Kelley asserted various defenses, principally that under the Connell lease, ¶ 1, the lessee had the right to use the surface of the leased premises to construct roads in connection with mineral operations “on any adjacent lands.”
*1104 The District Court issued an opinion in December 1996, holding that Kelley owned a lessee’s interest in the Connell lease. Under ¶ 1 of the lease, it was entitled to construct roads to further mineral operations on any adjacent lands. |°The court rejected the Connells’ argument that Kelley’s operations were unreasonable under Mineral Code art. 11, while commenting that Kelley’s actions were “brash and uncivil.” The court denied the preliminary injunction, and this was reduced to judgment on January 30,1997.
At a subsequent hearing, the parties submitted the issue of permanent injunction on the prior record, with no new evidence, and Kelley tendered $3,199.26, which the Con-nells accepted, for surface damage only. On June 24, 1997 final judgment was rendered for the stipulated amount of surface damages and denying injunctive relief and trespass damages. The Connells have appealed.

The Connell lease

The Connell lease, ¶ l,[5] provides as follows:
Lessor [the Connells] in consideration of One Hundred and No/100 and OVC Dollars ($100.00), in hand paid, of the royalties herein provided, hereby grants, leases and lets exclusively unto Lessee [Mrs. Hurley] for the purposes of investigating, exploring, prospecting, drilling and mining for and producing oil, gas and all other minerals, laying pipe lines, building tanks, power stations, telephone lines, and other structures thereon to produce, save, take care of, treat, transport and own said products and for dredging and maintaining canals, constructing roads and bridges, and building houses for its employees, and, in general, for all appliances, structures, equipment, servitudes, and privileges which may be necessary, useful or convenient to or in connection with any such operations conducted by Lessee thereon, or on any adjacent lands, the following described land in Webster Parish: * * *
This lease also covers and includes bat-tures, accretions and all other land owned by Lessor adjacent to the land particularly described above. For purposes of calculating the rental payments hereunder provided for, said land is estimated to comprise 140 acres, whether it actually comprises more or less, (emphasis added)

Applicable law

A mineral lease is a contract by which the lessee is granted the right to explore for and produce minerals. La. R.S. 31:114. It is a real right with some | characteristics in the nature of a limited personal servitude or right of use. La. R.S. 31:16; id., comment ¶ 3. It is regulated by the articles of the Louisiana Mineral Code, La. R.S. 31:1 et seq., and by relevant civil code concepts. La. R.S. 31:2. The parties to a mineral lease may generally renounce or modify the codal provisions in their favor, provided such renunciation or modification does not affect the rights of others and is not contrary to the public good. La. R.S. 31:3.
The lessee does not owe a fiduciary obligation to his lessor, but is bound to perform the contract in good faith and to develop the property leased as a reasonably prudent operator for the mutual benefit of himself and his lessor. La. R.S. 31:122; Dawes v. Hale, 421 So.2d 1208 (La.App. 2d Cir.1982), and citations therein. The partial assignment or partial sublease of a mineral lease does not divide the mineral lease. La. R.S. 31:130. The obligations created by mineral lease, like the obligations imposed by mineral servi-tudes, cannot be divided in a manner which might impose a greater burden on the leased premises (or on the servient estate). See C.C. arts. 652, 747.
Injunction, a provisional remedy, shall issue “in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law.” La. C.C.P. art. 3601. No showing of irreparable injury is required, however, when the owner of real property seeks in-junctive relief against a trespasser. La. C.C.P. art. 3663; Adcock v. Marshall Exploration Inc., 434 So.2d 471 (La.App. 2d Cir. 1983), and citations therein.

Discussion

The Connells have advanced four assignments of error. The first contests the *1105 District Court’s analysis of the Connell lease; the other three address various evidentiary matters at trial. Because we find merit in the first assignment, we pretermit any consideration of the remainder.
| sThe Connells urge the court committed legal error by interpreting the “adjacent lands” clause to authorize Kelley to build a road on the leased property, when Kelley was not also exploring or operating on the leased property. They contend that the two references to adjacent lands in ¶ 1 of the Connell lease (highlighted in the text above) compel the conclusion that the lessee may build a road across the leased property and onto adjacent property, but only .if that property is also owned by the lessor. They assert that it is contrary to the spirit of the lease to let Kelley use the tract for a road that has “nothing whatsoever to do with” the operation of the leased premises, and is in fact detrimental to it.
We do not agree that the lease language must be construed to prohibit the lessee from building a road on the leased premises unless the adjacent premises is also owned by the lessor; such an analysis would appear to conflict with the positive provision for “constructing roads and bridges.” However, the duty of mutual benefit under R.S. 31:122 is a matter of public policy governing the burden that real rights may impose on the property. The duty may be contractually defined, but not abrogated. Dawes v. Hale, supra. The instant “adjacent lands” clause does not express a clear and unambiguous intent of the parties to define mutual benefit as it relates to the use of leased premises as access, and nothing more, to adjacent lands. In light of the contract language, the implied obligation of R.S. 81:122 and the unique factual circumstances presented, we find that it was incumbent upon Kelley to demonstrate, by a preponderance of the evidence, what benefit (if any) accrued to the Connells from Kelley’s use of the surface for no other purpose than as a road to the Crichton tract.
The Connells further contend that the lessee’s use of the surface of the leased tract for road construction must be reasonable. East v. Pan Am. Petroleum Corp., 168 So.2d 426 (La.App. 3d Cir.1964). They testified that their other |6lessees, Franks and Sonat, when working wells on the leased premises and on the Seamster tract, had used the unimproved dirt road, brought in minimal vehicular traffic, and carefully locked the gate when they were not present; in essence, this conservative Use of the surface set the standard for reasonableness. Kelley’s actions, by contrast, were much more invasive, damaged the premises, and diminished the desirability of the tract for the Connells’ future retirement homes. The Connells testified that Kelley’s actions were all the more unnecessary since the Crichton well could be accessed by an alternative path which, according to Mrs. Davis, Kelley could use without objection from her family.
The division of a servitude may not result in the imposition of “additional burden” upon the servient estate. La. C.C. art. 747; Ohio Oil Co. v. Ferguson, 213 La. 183, 34 So.2d 746 (1946). This principal applies by analogy to the right of use conferred by the Connell lease. As noted, the Connells testified that Kelley’s use of the surface differed in significant degree from that of the other lessees. The prohibition against additional burden, however, is not absolute. In the context of a mineral lease, R.S. 31:122 convinces us that a lessee such as Kelley may indeed increase the burden on the servient estate, provided that he can show that his conduct is in good faith and for the mutual benefit of the parties.
After close review of the record, we are constrained to find that Kelley failed to prove by a preponderance of the evidence that building this road across the Connell tract, simply for access to its Crichton operations, conferred any benefit whatsoever upon the Connells. There is no showing, for example, that the road and development activity for the Crichton tract will facilitate development of other wells on the Connell tract, or that the Crichton well will be unitized with any of the Connells’ lands. Cf. Grayson v. Lyons, Prentiss & McCord, 226 La. 462, 76 So.2d 531 (1954). The only “benefit” shown is a high-quality oilfield roadbwhere a “pig trail” used to lie; however, this road is unwanted, heavily traveled, and clearly not consistent with the mineral development of the Connell *1106 tract. We therefore conclude that Kelley failed to meet its burden of proving mutual benefit. The judgment finding compliance with the Connell lease will be reversed.
The relief sought in petition is a permanent injunction against each of the defendants prohibiting them, their agents, employees or assigns from committing further acts of trespass on the Connell tract. As the Connells have established their ownership of the property, and Kelley has failed to establish its right to use the property as a roadway to the Crichton tract, the Connells are entitled to injunction without any showing of irreparable harm. Adcock v. Marshall Exploration Inc., supra. Judgment will be rendered accordingly.
The Connells also requested a judgment for trespass damages. Surface damages of $3,199.25 were stipulated and have been paid. Beyond this, the record does not show any diminution to the value of the tract, or compensable mental anguish sustained by the Connells. Boswell v. Roy O. Martin Lumber Co., 363 So.2d 506 (La.1978); Foster v. Beard, 221 So.2d 319 (La.App. 2d Cir. 1969). Thus no trespass damages are warranted on this record.

Decree

For the reasons expressed, the judgment is REVERSED. Judgment is RENDERED herein in favor of the plaintiffs, Mattie Connell Caskey, Sue Connell and Virginia Connell Davis, and against the defendants, Kelley Oil Co., Brammer Engineering and Justiss Oil Co., restraining, enjoining and prohibiting the defendants, their agents, employees or assigns, from committing any further acts of trespass upon the plaintiffs’ tract, described in footnote 2. Trial and appellate costs are assessed to the defendants, Kelley Oil Co. and Brammer Engineering.
REVERSED AND RENDERED.

. In the petition the defendant’s name is mistakenly given as "Kelly Oil Co.”

. The tract is described as the east half of the southwest quarter (E'A of SW'A), northwest quarter of southeast quarter (NE'A of SE'A), and west half of southwest quarter of southeast quarter (W 14 of SW'A of SEA) of Section 26, Township 18 North, Range 9 West.

. An Act of Partition filed as Exhibit P-12 shows that the plaintiffs partitioned the surface rights to the tract in 1982; the road at issue herein crosses only the portions of the surface owned by Mrs. Connell and Mrs. Caskey. R.p. 240.

.Also named as defendant was Justiss Oil Co., the contractor who drilled the Crichton well. Kelley states in brief that drilling has been completed and Justiss no longer has any interest in the suit; however, Justiss was never formally dismissed.

. The mineral lease is a Bath’s Form Louisiana Spec. 14-BR1-2A-PX (10/65).